MICHAEL LEHNERS, ESQ.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331
(775) 786-1695
email michaellehners@yahoo.com
Attorney for Defendant
Frontier Financial Credit Union

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

|  |  |
|---|---|
| | BK-N- 09-50815 |
| | CHAPTER 7 |
| | |
| | Hearing Date: 1/8/14 |
| IN RE | and Time: 10:00 a.m. |
| | Mtn No. _____ |
| DEBORAH DUMLAO, | Est Time: 15 Minutes |
| | OPPOSITION TO MOTION TO REDEEM |
| Debtor(s). | |
| _____/ | |

COMES NOW Frontier Financial Credit Union, by and through undersigned counsel and files the following Opposition to the Debtor's Motion to Redeem Personal Property. The Motion is improper for two reasons. First, the Debtor never exempted the vehicle she now seeks to redeem, nor has it been abandoned from the Estate. Second, after the BAP reversed and remanded Judge Peterson's order granting summary judgment in *Dumlao vs. Frontier Financial*, Adv. No. 10-5041, the Debtor filed this motion instead of proceeding as directed by the BAP in the adversary proceeding.

MEMORANDUM OF POINTS AND AUTHORITIES

**1.    Background**

1

The Debtor filed her petition under Chapter Seven on March 25, 2009. When she filed, she had two vehicles. One was a 1999 GMC that she valued at $5,000.00. There was no debt owed on this vehicle, and she claimed it as exempt pursuant to NRS 21.090(1)(f). No objection was made to the Debtor's exemption of her 1999 GMC within the 30 day period set forth under Fed. R. Bank. Pro. 4003(b).

The Debtor's other vehicle is a 2004 Acura RSX. She valued it at $8,960.00. This was subject to Frontier Financial's secured claim. More was owed on the vehicle than it was worth. Schedule "D" reflects a secured claim of $10,816.00.

Frontier Financial's secured claim consisted of two loans. The money she borrowed to buy the Nissan and the money she charged on her Visa card. The visa debt was listed in Schedule "F" for $2,562.00. A copy of the Debtor's schedule "B", "C", "D" and "F" are attached hereto as Exhibit "1".

Like all other credit unions, Frontier's visa agreement and vehicle loan contained a dragnet clause. The effect of this clause is collateral pledged for one loan secures all loans the member may have now or in the future.

The Debtor received her discharge on July 8, 2009 (Docket No. 15). On December 10, 2009 the case was closed (Docket No. 18). On February 1, 2010 Ms. Dumlao made a cash payment of $7,050.01 on her vehicle loan. The balance owing on her visa agreement was $2,783.63. She demanded turnover of the title. Frontier refused, relying upon the dragnet clause in the loan documents. On June 9, 2010 the Debtor filed a motion to reopen the case (Docket No. 19). The motion was granted on

June 11, 2010 (Docket No. 22). On June 17, 2010 the Debtor filed an adversary complaint against Frontier Financial, Adv. No. 10-5041.

## 2. The Adversary Complaint & Appeal

The adversary complaint's first cause of action states that Frontier Financial failed to object to the discharge of the Plaintiff's visa debt. The second cause of action says the credit union failed to inform the Plaintiff that the visa debt was secured by her automobile. The third cause of action says no one from the credit union appeared at the Plaintiff's §341 meeting or filed an objection to the discharge of its debt. The fourth and final cause of action says the Plaintiff paid off the automobile loan and demanded title. It says Frontier Financial refused to deliver title because the loan was cross collateralized with the visa agreement. It also states the Plaintiff is afraid to drive the car because she is worried about Frontier Financial repossessing it.

The complaint's prayer for relief asks for a declaration that the debt was discharged, an injunction to prevent Frontier Financial from collecting its debt from the Plaintiff, a writ of mandate compelling Frontier Financial to deliver title to the automobile and damages for the loss of use of the automobile when the Plaintiff has had continuous possession of the vehicle.

On July 20, 2010 Frontier filed a motion to dismiss or in the alternative for summary judgment (Adv. Docket Nos. 4 and 5). Frontier's motion was supported by the Affidavit of Bruce Rodela. A copy of Mr. Rodela's affidavit with exhibits has been attached to this Opposition as Exhibit "2". It explains the financial transactions between the Debtor and Frontier. The Affidavit's exhibits are the loan documents that were at issue.

3

Frontier Financial, not Ms. Dumlao, filed the only motion which came before the Bankruptcy Court. With no motion pending, Judge Peterson, on his own initiative, ordered that summary judgment be entered against Frontier. On November 30, 2010 the Bankruptcy Court entered its memorandum decision and order. On December 15, 2010 the Bankruptcy Court entered its final memorandum of decision and order that assessed attorney fees and costs against Frontier Financial.

Frontier timely appealed, and on August 5, 2011 the BAP entered its Memorandum decision. It reversed the grant of summary judgment. However, the BAP declined to enter summary judgment in favor of Frontier Financial. The BAP stated that the Bankruptcy Court failed to address whether the application of the cross collateral clause would violate the duty of good faith or whether the agreements at issue were unenforceable adhesion contracts under Nevada's Uniform Commercial Code. A copy of this Decision has been attached hereto as Exhibit "3".

**3.    Post Appeal Events**

Simply put, there were none. After the BAP reversed and remanded, the adversary proceeding sat dormant until Debtor's counsel, who was also counsel in the adversary and appeal, filed this motion to redeem. That motion was filed in the main bankruptcy case and not the adversary.

The BAP clarified pre-existing 9th Circuit law. Unavoided liens pass through bankruptcy, and they are enforceable in rem. In re Cortez, 191 B.R. 174, (9th Cir. BAP 1995); Siegel v. Federal Home Loan Mortg. Corp., 143 F.3d 525, (9th Cir. 1998); In re Isom, 901 F.2d 744, 745 (9th Cir.1990).

4

Put another way, the language of §524(a) and the prohibitions therein do not encompass passivity. In re Mogg, 2007 WL 2608501, *4 (Bkrtcy. S.D. Ill. 2007), citing McCready v. eBay, Inc., 453 F.3d 882, 888-89 (7th Cir.2006).

**4.    It was not Frontier's Duty to Prosecute the Adversary Proceeding after Remand**

The BAP remanded this matter over two years ago. Fed. R. Bank. Pro. 7041 provides that Fed. R. Civ. Pro. 41 applies in adversary proceedings with certain exceptions that are not applicable here. Fed. R. Civ. Pro. 41(b) states in relevant part that if the plaintiff fails to prosecute or to comply with a court order, a defendant may move to dismiss the action or any claim against it.

The BAP remanded this matter on August 5, 2011. It is now December of 2013. The Plaintiff has done nothing. The vehicle has depreciated. The Debtor has not made any payments on the visa obligation. It is well within the power of a Court to *sua sponte* to dismiss for failure to prosecute. In the face of such a dismissal, plaintiff cannot contend that defendant has been responsible for untoward delay: the duty to prosecute an action lies with the plaintiff, not the defendant. Gomez-Vazquez v. Litton Industries Leasing Corp 67 F.R.D. 117 (D. Puerto Rico 1975).

In Wilson v. Freitas, 121 Hawaii 120, 214 P.3d 1110 (2009) more than one year had elapsed between the time the Plaintiff indicated he would appeal the arbitrator's discovery decision and the filing of the Defendant's motion to dismiss. As in this case, that Court found the Plaintiff did not engage in any communication with the County

Defendants or take any action regarding the case during that period of time.

Citing *Gomez*, supra, the Court held that as the plaintiff, it was Wilson's duty, and not the duty of the County Defendants, to prosecute his action. The Plaintiff provided no explanation for his failure to communicate with the County Defendants or take any action to move the case forward for more than a year.

On appeal, the Appellate Court concluded that there was a sufficient basis for the circuit court to determine that Wilson had engaged in deliberate delay that justified the dismissal of his complaint against the County Defendants. It held that the circuit court did not abuse its discretion in dismissing Wilson's complaint against the County Defendants for failure to prosecute. Id at 134-135.

Frontier Financial has filed a motion to dismiss the adversary for failure to prosecute. Frontier has incorporated those arguments into this portion of its brief should the Debtor blame Frontier for allowing the Adversary to lay dormant.

**5.    Redemption   is   not   Permissible**

11 U.S.C. §722 is clear.

> An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title or has been abandoned under section 554 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien in full at the time of redemption.

Emphasis supplied

As previously illustrated, Ms. Dumlao did not exempt the Acura. She filed her exemption on her $5,000.00 GMC. This leaves the question of whether or not the Acura was abandoned back to her under the provisions of 11 U.S.C. §554. That section provides:

> (a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.
>
> (c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case is abandoned to the debtor and administered for purposes of section 350 of this title.
>
> (d) Unless the court orders otherwise, property of the estate that is not abandoned under this section and that is not administered in the case remains property of the estate.

There has been no request by the Chapter Seven Trustee to abandon the Acura. Likewise, the Debtor did not file a motion to have the Acura abandoned prior to filing her motion to redeem. This leaves §554(c). This case was closed on December 10, 2009. At that time, the Acura would be abandoned back to the Debtor. However, the Debtor reopened the case.

11 U.S.C. §350(b) states as follows:

> A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause.

7

The reopening of a case is simple mechanical device by which the administration of the estate may be resumed or continued. Nothing concerning the merits is considered when the motion is granted. <u>In re Daniels</u>, 34 B.R. 782 (9th Cir. BAP 1983). Because the administration is continued, the assets in the case are not abandoned by the earlier closure of the bankruptcy case. For that reason, the Acura is still in this case, and it is not exempt.

## 6. The Motion to Redeem is not Timely

BAPCPA amended 11 U.S.C. §521. Within 30 days after the petition is filed, the Debtor is to file a statement of intention with respect to the retention or surrender of estate property that is subject to a secured debt. If applicable, the statement of intent is to state that the property is claimed as exempt, and that the debtor intends to redeem such property. See 11 U.S.C. §521(a)(2)(A).

Section 521 does not give the Debtor unlimited time to perform the actions described in the statement of intent. Performance is to take place within 30 days after the first date set for the meeting of creditors under section 341(a). An extension of time can be obtained for cause if made within the initial 30 day period. See 11 U.S.C. §521(a)(2)(B).

A copy of the Debtor's statement of intention has been attached hereto as Exhibit "4". It says she is going to retain the Acura and reaffirm the debt. She cannot now amend her statement to redeem. Amendments to the §521 statement of intent were not permissible even under pre-BAPCPA law.

Prior to BAPCPA, 11 U.S.C. §521(2) provided as follows:

(A)   within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or

within such additional time as the court, for cause, within such period fixes the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property;

(B)    within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph.

In other words, under §521(2)(A), chapter 7 debtors are allowed 30 days from the date of the petition to declare their intention with respect to the retention or surrender of property securing consumer debts. Pursuant to subsection (B), the debtor must then perform his or her stated intention within 45 days after filing its notice of intent. In re Gregg, 199 B.R. 404, 406 (Bkrtcy.W.D.Mo. 1996).

In the *Gregg* case, the Debtors filed their statement of intent with their chapter 7 petition on April 23, 1996. At that time, they stated they intended to retain the mobile home and reaffirm the debt to Union Bank. However, at the first meeting of creditors on May 29, 1996, the debtors declared they had changed their minds and stated it was now their intention to surrender the collateral to Union Bank.

The Court held the Debtors could not change their mind after the time periods in §521(2) expired. The rationale is to notify creditors of how the Debtors plan to proceed so they can make informed decisions of what action to take. Putting it in the Court's own words:

As Union Bank asserts, the Bankruptcy Code contains no provision which allows the debtor to extend the 45-day

9

period by declaring a new intention. As other courts have noted, the purpose of §521(2) is to notify creditors of the debtor's intent so the creditor is better able to make informed decisions about how to proceed, thereby avoiding unnecessary costs and delays. *See In re Harper,* 143 B.R. 682, 686 (Bankr.W.D.Tex.1992); *In re Belanger,* 118 B.R. 368, 371 (Bankr.E.D.N.C.1990). Allowing a debtor to change his declared intention regarding a piece of property and thereby automatically start a new 45-day period within which to perform the new intention would completely abrogate the purpose of the 45-day period.

Id at 406.

The Debtors in Gregg, supra, changed their mind on May 29, six days after the expiration of the 30-day declaration period. Id at 406. The Debtor in this case has waited for over four years, and she has not even bothered to file an amended statement of intention.

The BAPCPA amendments to §521 allow the Court to grant an extension of time to both the time to file a statement of intention and the time in which to perform those actions. Extensions of time must be granted within the initial period. See §521(a)(2)(A) and (B).

There is no authority that allows a Debtor to reopen a case and amend her statement of intent four years after the fact, especially when she already used her motor vehicle exemption.

To make matters worse, she does not tender the value of the vehicle to Frontier. Instead, she tries to characterize the pay off of the vehicle loan as performance under an amended statement of intention that was never filed.

## 7. Conclusion

The Court may wonder why Frontier has spent the resources to enforce its dragnet clause. Clearly, the vehicle is not worth what Frontier has spent in legal costs. The answer is both simple and direct.

The Uniform Commercial Code was amended in 1999. The amendment to Article Nine that affects dragnet clauses is UCC 9-§204(c). That provision states:

> A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment.

See NRS 104.9203(3)

Before the 1999 amendment, courts employed various tests to see if future advances were secured with the same collateral. See <u>In re Auza</u>, 181 B.R. 63, 68 (9th Cir. BAP 1995). It applied the "reliance on the security" test to analyze the validity of a dragnet clause. The 1999 amendments legislatively overruled these cases. That was made clear in Drafter's Comment 5 that provides as follows:

> 5. Future Advances; Obligations Secured. Under subsection (c) collateral may secure future as well as past or present advances if the security agreement so provides. This is in line with the policy of this Article toward security interests in after-acquired property under subsection (a). Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. <u>This Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral</u>.

Emphasis supplied

Virtually every court presented with a credit union dragnet clause after the addition of Section 204 has upheld it. Please see <u>In re Watson</u>,

286 B.R. 594, (Bkrtcy. D.N.J. 2002); In re Branch 368 B.R. 80, (Bkrtcy. D. Colo. 2006) and In re Franklin 343 B.R. 815, (Bkrtcy. N.D. W.Va. 2006).

Frontier Financial, like most other credit unions, utilizes Credit Union National Association (CUNA) to author the loan agreements. CUNA is a confederation of state credit union leagues. It is the premier national trade association serving state credit unions. As a member, Frontier has an obligation to its sister credit unions to utilize its best efforts to defend the validity of the contracts that CUNA drafts. Any adverse court opinion will directly affect the other CUNA members who use the same agreement.

With that said, Frontier would have accepted a cash lump sum of the high book value on the Acura. In fact, Frontier is still willing to accept such an offer to resolve this case without any adverse written decision. Otherwise, Frontier respectfully requests that the Debtor's motion be denied for the reasons stated.

Dated: This _____ day of _____, 2013

By: _____
Michael Lehners, Esq.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331

1 2

# Exhibit  1

# Exhibit  1

B6B (Official Form 6B) (12/07)

IN RE DUMLAO, DEBORAH                                                          Case No. _____
_____
              Debtor(s)                                                                              (If known)

## SCHEDULE B - PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property." If the property is being held for a minor child, simply state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1.  Cash on hand. | | **Cash on hand** | | 5.00 |
| 2.  Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | **Savings Account #...3193 Nevada State Bank**<br>**Savings Account #...8003 Frontier Financial** | | 100.00<br><br>25.00 |
| 3.  Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4.  Household goods and furnishings, include audio, video, and computer equipment. | | **Household goods and furnishings** | | 3,500.00 |
| 5.  Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6.  Wearing apparel. | | **Wearing apparel** | | 100.00 |
| 7.  Furs and jewelry. | | **Jewelry** | | 400.00 |
| 8.  Firearms and sports, photographic, and other hobby equipment. | | **Sports and hobby equipment**<br>**Misc. Camping Equipment** | | 200.00 |
| 9.  Interest in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | | **Term Life Insurance-No Cash Value** | | 0.00 |
| 10.  Annuities. Itemize and name each issue. | X | | | |
| 11.  Interests in an education IRA as defined in 26 U.S.C. § 530(b)(1) or under a qualified State tuition plan as defined in 26 U.S.C. § 529(b)(1). Give particulars. (File separately the record(s) of any such interest(s). 11 U.S.C. § 521(c).) | X | | | |
| 12.  Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Give particulars. | X | | | |
| 13.  Stock and interests in incorporated and unincorporated businesses. Itemize. | X | | | |
| 14.  Interests in partnerships or joint ventures. Itemize. | X | | | |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) -- Cont.

IN RE DUMLAO, DEBORAH _____    Case No. _____
                              Debtor(s)                                    (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 15.  Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 16.  Accounts receivable. | X | | | |
| 17.  Alimony, maintenance, support, and property settlements in which the debtor is or may be entitled. Give particulars. | X | | | |
| 18.  Other liquidated debts owed to debtor including tax refunds. Give particulars. | X | | | |
| 19.  Equitable or future interest, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule A - Real Property. | X | | | |
| 20.  Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |
| 21.  Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 22.  Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 23.  Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 24.  Customer lists or other compilations containing personally identifiable information (as defined in 11 U.S.C. § 101(41A)) provided to the debtor by individuals in connection with obtaining a product or service from the debtor primarily for personal, family, or household purposes. | X | | | |
| 25.  Automobiles, trucks, trailers, and other vehicles and accessories. | | 1999 GMC 1500-165k miles Fair to poor condition | | 5,000.00 |
| | | 2004 Acura RSX Type S-105k miles Fair Condition | | 8,960.00 |
| 26.  Boats, motors, and accessories. | X | | | |
| 27.  Aircraft and accessories. | X | | | |
| 28.  Office equipment, furnishings, and supplies. | X | | | |
| 29.  Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 30.  Inventory. | X | | | |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6B (Official Form 6B) (12/07) - Cont.

IN RE DUMLAO, DEBORAH                                                    Case No. _____
_____                                                 _____
                Debtor(s)                                                                      (If known)

## SCHEDULE B - PERSONAL PROPERTY
### (Continuation Sheet)

| TYPE OF PROPERTY | N O N E | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 31. Animals. | | **1 Dog-"Love Bug"** | | 10.00 |
| 32. Crops - growing or harvested. Give particulars. | X | | | |
| 33. Farming equipment and implements. | X | | | |
| 34. Farm supplies, chemicals, and feed. | X | | | |
| 35. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | **TOTAL** | **18,300.00** |

(Include amounts from any continuation sheets attached.
Report total also on Summary of Schedules.)

**0** continuation sheets attached

© 1993-2009 EZ-Filing, Inc. (1-800-998-2424) - Forms Software Only

Case 09-50815-gwz    Doc 1    Entered 03/25/09 17:09:56    Page 13 of 34

B6C (Official Form 6C) (12/07)

IN RE **DUMLAO, DEBORAH**                                                    Case No. _____
             Debtor(s)                                                                                      (If known)

## SCHEDULE C - PROPERTY CLAIMED AS EXEMPT

Debtor elects the exemptions to which debtor is entitled under:    ☐ Check if debtor claims a homestead exemption that exceeds $136,875.
(Check one box)

☐ 11 U.S.C. § 522(b)(2)
☑ 11 U.S.C. § 522(b)(3)

| DESCRIPTION OF PROPERTY | SPECIFY LAW PROVIDING EACH EXEMPTION | VALUE OF CLAIMED EXEMPTION | CURRENT VALUE OF PROPERTY WITHOUT DEDUCTING EXEMPTIONS |
|---|---|---|---|
| **SCHEDULE B - PERSONAL PROPERTY** | | | |
| **Cash on hand** | NRS§21.090(1)(z) | 5.00 | 5.00 |
| **Savings Account #...3193**<br>**Nevada State Bank** | NRS§21.090(1)(z) | 100.00 | 100.00 |
| **Savings Account #...8003**<br>**Frontier Financial** | NRS§21.090(1)(z) | 25.00 | 25.00 |
| **Household goods and furnishings** | NRS § 21.090(1)(b) | 3,500.00 | 3,500.00 |
| **Wearing apparel** | NRS § 21.090(1)(b) | 100.00 | 100.00 |
| **Jewelry** | NRS § 21.090(1)(a) | 400.00 | 400.00 |
| **Sports and hobby equipment**<br>**Misc. Camping Equipment** | NRS§21.090(1)(z) | 200.00 | 200.00 |
| **1999 GMC 1500-165k miles**<br>**Fair to poor condition** | NRS § 21.090(1)(f) | 5,000.00 | 5,000.00 |
| **1 Dog-"Love Bug"** | NRS§21.090(1)(z) | 10.00 | 10.00 |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07)    Case 09-50815-gwz    Doc 1    Entered 03/25/09 17:09:56    Page 16 of 34

IN RE DUMLAO, DEBORAH _____    Case No. _____
                                    Debtor(s)                                    (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured nonpriority claims to report on this Schedule F.

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See Instructions Above) | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **3499911876766143**<br>**Amex**<br>**P.O. Box 297871**<br>**Fort Lauderdale, FL  33329** | | H | **Revolving account opened 4/06**<br>**Credit Card Debt** | | | | **3,516.00** |
| ACCOUNT NO. **529149230825**<br>**Capital One**<br>**P.O. Box 85520**<br>**Richmond, VA  23285** | | H | **Revolving account opened 4/03**<br>**Credit Card Debt** | | | | **3,125.00** |
| ACCOUNT NO. **0375137790**<br>**CMI**<br>**P.O. Box 118288**<br>**Carrollton, TX  75011-8288** | | | **2008**<br>**Collections** | | | | **233.55** |
| ACCOUNT NO.<br>**Radiology Consultants, LTD**<br>**P.O. Box 5700**<br>**Reno, NV  89513-5700** | | | **Assignee or other notification for:**<br>**CMI** | | | | |

_2_ continuation sheets attached

Subtotal
(Total of this page) $ **6,874.55**

Total
(Use only on last page of the completed Schedule F. Report also on the Summary of Schedules and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) $

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6F (Official Form 6F) (12/07) - Cont.

IN RE DUMLAO, DEBORAH _____    Case No. _____
                              Debtor(s)                                                    (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 9260760000076967<br>Collection Service/Nevada<br>777 Forest St.<br>Reno, NV 89509 | | H | Open account opened 6/08<br>Collections | | | | 35.00 |
| ACCOUNT NO.<br>Dept. Of Employment, Training And Rehab.<br>Employment Security Division<br>2800 E Saint Louis Ave/<br>Las Vegas, NV 89104 | | | 2008<br>Over payment | | | | 3,500.00 |
| ACCOUNT NO. 426684110509<br>First Usa, NA<br>800 Brooksedge Blvd.<br>Westerville, OH 43081 | | H | Revolving account opened 5/06<br>Credit Card Debt | | | | 2,787.00 |
| ACCOUNT NO. 4433-1620-0981-0059<br>Frontier Financial<br>P.O. Box 70099<br>Reno, NV 89570 | | H | Revolving account opened 2/02<br>Credit Card Debt | | | | 2,562.00 |
| ACCOUNT NO. 6036336426779479`<br>Lending Tree<br>2905 Clear Acre Lane<br>Reno, NV 89512 | | | 2008<br>Personal Loan | | | | 100.00 |
| ACCOUNT NO.<br>St. Mary's Regional Medical Center<br>235 W 6th St<br>Reno, NV 89503-4548 | | | 2008<br>Medical Services | | | | 650.00 |
| ACCOUNT NO.<br>Grant & Weber<br>P.O. Box 8669<br>Calabasas, CA 91372 | | | Assignee or other notification for:<br>St. Mary's Regional Medical Center | | | | |

Sheet no. __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page)    $ 9,634.00

Total
(Use only on last page of the completed Schedule F. Report also on
the Summary of Schedules, and, if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.)    $

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Case 09-50815-gwz    Doc 1    Entered 03/25/09 17:09:56    Page 18 of 34

B6F (Official Form 6F) (12/07) - Cont.

IN RE DUMLAO, DEBORAH _____    Case No. _____
                                          Debtor(s)                                              (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **4190-0303-3062-6424** <br> **US Bank/NA ND** <br> **101 5th St E Ste A** <br> **Saint Paul, MN  55101** | | H | **Revolving account opened 9/03** <br> **Credit Card Debt** | | | | **3,551.00** |
| ACCOUNT NO. <br> **Wanderer Law PC** <br> **302 East Carson Ave., Ste. 520** <br> **Las Vegas, NV  89101-5990** | | | **Assignee or other notification for:** <br> **US Bank/NA ND** | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |
| ACCOUNT NO. | | | | | | | |

Sheet no. **2** of **2** continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

|  | Subtotal (Total of this page) | $ | **3,551.00** |
|---|---|---|---|
|  | Total (Use only on last page of the completed Schedule F. Report also on the Summary of Schedules, and, if applicable, on the Statistical Summary of Certain Liabilities and Related Data.) | $ | **20,059.55** |

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

# Exhibit 2

# Exhibit 2

MICHAEL LEHNERS, ESQ.
429 Marsh Ave.
Reno, Nevada 89509
Nevada Bar Number 003331
(775) 786-1695
email michaellehners@yahoo.com
Attorney for Defendant
Frontier Financial Credit Union

*E & 7/20/10*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

oOo

|  |  |
|---|---|
| IN RE | BK-N- 09-50815<br>CHAPTER 7<br>Adv. No. 10-5041 |
| DEBORAH DUMLAO, | Hearing Date:_____<br>and Time:_____<br>Mtn No. _____<br>Est Time: 15 Minutes |
| Debtor(s). | |
| DEBORAH DUMALO | |
| Plaintiff, | AFFIDAVIT OF BRUCE RODELA IN<br>SUPPORT OF MOTION TO DISMISS OR IN<br>THE ALTERNATIVE FOR SUMMARY<br>JUDGMENT |
| vs. | |
| FRONTIER FINANCIAL CREDIT<br>UNION | |
| Defendant, | |
| _____/ | |

Bruce A. Rodela, being first duly sworn, deposes and under penalty of perjury avers:

1.    I am a resident of the City of Reno, County of Washoe, State of Nevada, and over 18 years of age. This declaration is based on my personal knowledge except for such matters as are stated on information and belief, and as to those items, I believe them to be true. This declaration is made in support of the Motion to Dismiss or In the Alternative for Summary Judgment in the above

1

referenced proceeding and represents my testimony if called upon to present same in court.

2. I am employed by the Defendant as its president.

3. My duties as president consist of overseeing the operations of the credit union including the implementation and execution of lending policies with the CUNA Loanliner Program.

4. As part of my duties, I have regular access to member files which contain loan documents.

5. Before executing this affidavit, I have reviewed the member file of Deborah Dumalo.

6. Sometime prior to February 2, 2002 the Credit Union mailed Ms. Dumlao a credit card solicitation. A true and correct copy of this solicitation has been attached hereto as Exhibit "1".

7. Ms. Dumlao responded to this advertisement, and on February 2, 2002 she filled out a visa credit card application and signed it. A true and correct copy of this application has been attached hereto as Exhibit "2".

8. When Ms. Dumlao filled out her visa application, she was given a copy of the Visa Classic Silver Credit Card Agreement. A copy of this credit card agreement has been attached hereto as Exhibit "3".

9. Frontier Financial Credit Union uses the Loanliner Program to make loans to members. Credit Union National Association (CUNA) drafts the Loanliner Program agreements which are presented to the members to sign.

10. On February 3, 2005 Ms. Dumlao applied for a signature loan in the amount of $6,000.00 through the Credit Union's Loanliner Program. A true and correct copy of this Loanliner Open-End Voucher has been attached hereto as Exhibit "4".

11. When a member enters the Loanliner Program for the first time, it is the policy of Frontier Financial Credit Union to have the loan officer have the

2

member read and initial the cross collateralization clause. The reason for this is to insure each member is aware of the fact that any collateral pledged for a loan under the Loanliner Program will secure all loans owed to the credit union at any time.

12.    I have reviewed Ms. Dumlao's file before signing this affidavit. The February 3, 2005 Loanliner Open-End Voucher contains a cross collateralization clause, and it has been initialled by Ms. Dumlao.

13.    On October 15, 2006 Ms. Dumlao signed a Loanliner Open-End Voucher and Security Agreement in the amount of $16,285.00. This advance was secured with her 2002 Acura RSX Sport Vehicle. A copy of this Open-End Voucher and Security Agreement has been attached hereto as Exhibit "5".

14.    On February 1, 2010 Ms. Dumlao made a cash payment of $7,050.01 on her October 15, 2006 Loanliner Open-End Voucher and Security Agreement. A copy of the transaction report reflecting this payment has been attached hereto as Exhibit "6".

15.    The balance owing on Ms. Dumlao's visa agreement is $2,783.63. A copy of the transaction report reflecting this balance has been attached hereto as Exhibit "7". This amount does not include attorney fees and costs incurred by the Credit Union.


FURTHER YOUR AFFIANT SAYETH NOT


Dated: This ___ day of _____, 2010

_____
Bruce A. Rodela

Subscribed and sworn to before me
this _20_ day of _July_, 2010

_____
NOTARY PUBLIC

DOLORES STIGALL
Notary Public - State of Nevada
Appointment Recorded in Washoe County
No: 93-0640-2 - Expires May 14, 2013

3

# Exhibit  1

# Exhibit  1

| TABULAR DISCLOSURE | |
|---|---|
| Annual Percentage Rate (APR) for Purchases | VISA Silver<br>_____ %<br>ViSA Classic<br>_____ % |
| Other APR's** | Cash Advance APR<br>VISA Silver _____ %<br>VISA Classic _____ % |
| Variable Rate Information | Your APR rate may vary. The rate is determined by adding 6% (Silver) or 10% (Classic) to the highest Prime Rate published in *The Wall Street Journal* "Money Rates" Table on the last Wednesday of each calendar quarter. |
| Grace Period for Purchases | 25 days |
| Method of Computing the Balance for Purchases | Average Daily Balance (Including new purchases) |
| Annual Fee | $15.00 |
| Minimum Finance Charge | None |

Transaction Fee for Purchases ............... None
Balance Transfer Fee ............................... None
Late Payment Fee ................................. $20.00
Over-the-Credit Limit Fee .................... $20.00

** Applies to both cards.

The information about the costs of the card described in this application is accurate as of 10/2002. This information may have changed after that date. To find out what may have changed, call or write to us at the number or location listed above.

To reorder call 1-800-356-5012
© CUNA Mutual Group, 1996, 2000        31397-FK1 REV 3/00



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**BUSINESS REPLY MAIL**
FIRST CLASS MAIL     PERMIT NO.167     RENO, NV

POSTAGE WILL BE PAID BY ADDRESSEE

WASHOE CREDIT UNION
PO BOX 70099
RENO NV 89570-0099



# Washoe Credit Union's Credit Card saves you more, costs you less!

*Read their Fine Print*

# Exhibit 2

# Exhibit 2



**Washoe Credit Union**
P.O. Box 309041-gwz
Reno, NV 89570-0099
(775) 829-2070

A table that includes the APRs and other required cost disclosures for the credit card applications is on the reverse side of this application.

 

**CREDIT CARD APPLICATION**

---

Check below to indicate the type of credit for which you are applying. Married Applicants may apply for a separate account.

☐ **Individual Credit:** You must complete the **Applicant** section about yourself and the **Other** section about your spouse if: (1) you live in or the property pledged as collateral is located in a community property state (AK, AZ, CA, ID, LA, NM, NV, TX, WA, WI); (2) your spouse will use the account, or (3) you are relying on your spouse's income as a basis for repayment. If you are relying on income from alimony, child support, or separate maintenance, complete the **Other** section to the extent possible about the person on whose payments you are relying.

☐ **Joint Credit:** If you are applying with another person, complete the **Applicant** and **Other** sections.

| **Applicant** | **Other:** ☐ Co-Applicant ☐ Spouse |
|---|---|
| NAME (Last – First – Initial) *Deborah L.* MOTHER'S MAIDEN NAME | NAME (Last – First – Initial) MOTHER'S MAIDEN NAME |
| ACCOUNT NUMBER *738003* SOCIAL SECURITY NUMBER *-1677* | ACCOUNT NUMBER SOCIAL SECURITY NUMBER |
| DRIVER'S LICENSE NUMBER/STATE *0690483 – NV* | DRIVER'S LICENSE NUMBER/STATE |
| BIRTHDATE *57* HOME PHONE *0270 982-4303* WORK PHONE/EXT | BIRTH DATE HOME PHONE ( ) WORK PHONE/EXT ( ) |
| E-MAIL ADDRESS | E-MAIL ADDRESS |
| PRESENT ADDRESS (Street - City - State - Zip) *Sparks Sp25* ☐OWN ☐RENT  YEARS AT THIS ADDRESS *9* | PRESENT ADDRESS (Street - City - State - Zip) ☐OWN ☐RENT  YEARS AT THIS ADDRESS |
| PREVIOUS ADDRESS (Street - City - State - Zip) ☐OWN ☐RENT  YEARS AT THIS ADDRESS | PREVIOUS ADDRESS (Street - City - State - Zip) ☐OWN ☐RENT  YEARS AT THIS ADDRESS |
| MORTGAGE/RENT OWED TO: | MORTGAGE/RENT OWED TO: |
| MORTGAGE BALANCE $ MONTHLY PAYMENT $ NO. OF DEPENDENTS & AGE | MORTGAGE BALANCE $ MONTHLY PAYMENT $ NO. OF DEPENDENTS & AGE |
| COMPLETE FOR JOINT CREDIT, SECURED CREDIT OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE ☐MARRIED ☐SEPARATED ☐UNMARRIED (Single - Divorced - Widowed) | COMPLETE FOR JOINT CREDIT, SECURED CREDIT OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE ☐MARRIED ☐SEPARATED ☐UNMARRIED (Single - Divorced - Widowed) |

| **Employment/Income** NAME AND ADDRESS OF EMPLOYER *Washoe Med Center* | **Employment/Income** NAME AND ADDRESS OF EMPLOYER |
|---|---|
| START DATE *85* POSITION *File Clerk* | START DATE POSITION |
| NOTICE: ALIMONY, CHILD SUPPORT, OR SEPARATE MAINTENANCE INCOME NEED NOT BE REVEALED IF YOU DO NOT CHOOSE TO HAVE IT CONSIDERED | NOTICE: ALIMONY, CHILD SUPPORT, OR SEPARATE MAINTENANCE INCOME NEED NOT BE REVEALED IF YOU DO NOT CHOOSE TO HAVE IT CONSIDERED |
| EMPLOYMENT INCOME $ PER ☐NET ☒GROSS  OTHER INCOME $ *4700* PER *YR* SOURCE *Husband* | EMPLOYMENT INCOME $ PER ☐NET ☐GROSS  OTHER INCOME $ PER SOURCE |
| NAME AND ADDRESS OF PREVIOUS EMPLOYER  START DATE/END DATE | NAME AND ADDRESS OF PREVIOUS EMPLOYER  START DATE/END DATE |

| Deposit Account Name & Account Number | VALUE | Creditor Account Name & Account Number | BALANCE | MONTHLY PAYMENT |
|---|---|---|---|---|
| SAVINGS | $ | CREDITOR | $ | $ |
| CHECKING | $ | CREDITOR | $ | $ |
| Other Assets | | CREDITOR | $ | $ |
| OTHER PROPERTY | $ | CREDITOR | $ | $ |
| OTHER | $ | AUTO | $ | $ |
| AUTO | MAKE        YEAR | OTHER | $ | $ |

| **Other Information About You** | | | | **APPLICANT** | | **OTHER** | |
|---|---|---|---|---|---|---|---|
| IF YOU ANSWER "YES" TO ANY QUESTION OTHER THAN #1, EXPLAIN ON AN ATTACHED SHEET. | | | | YES | NO | YES | NO |
| 1. ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? | | | | | | | |
| 2. DO YOU CURRENTLY HAVE ANY OUTSTANDING JUDGMENTS OR HAVE YOU EVER FILED FOR BANKRUPTCY, HAD A DEBT ADJUSTMENT PLAN CONFIRMED UNDER CHAPTER 13, HAD PROPERTY FORECLOSED UPON OR REPOSSESSED IN THE LAST 7 YEARS, OR BEEN A PARTY IN A LAWSUIT? | | | | | | | |
| 3. ARE YOU A CO-MAKER, CO-SIGNER OR GUARANTOR ON ANY LOAN NOT LISTED ABOVE? FOR WHOM (Name of Others Obligated on Loan): TO WHOM (Name of Creditor): | | | | | | | |

**Personal Reference** RELATIONSHIP  HOME PHONE:

NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU:

**State Law Notices** **OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law. **WISCONSIN RESIDENTS ONLY:** (1) No provision of any marital property agreement, unilateral statement under Section 766.59, or court decree under Section 766.70 will adversely affect the rights of the Credit Union unless the Credit Union is furnished a copy | of the agreement, statement or decree, or has actual knowledge of its terms, before the credit is granted or the account is opened. (2) You are **not** applying for this account or loan with your spouse. The credit being applied for, if granted, will be incurred in the interest of the marriage or family of the undersigned.

X _____
SIGNATURE FOR WISCONSIN RESIDENTS ONLY        DATE

**Signatures**

You promise that everything you have stated in this application is correct to the best of your knowledge. If there are any important changes you will notify us in writing immediately. You authorize the Credit Union to obtain credit reports in connection with this application for credit and for any update, increase, renewal, extension, or collection of the credit received. You understand that the Credit Union will rely on the information in this application and your credit report to make its decision. If you request, the Credit Union will tell you the name and address of any credit bureau from which it received a credit report on you. It is a federal crime to willfully and deliberately provide incomplete or incorrect information on loan applications made to federal credit unions or state chartered credit unions insured | by NCUA. You understand that the use of your card will constitute acknowledgment of receipt and agreement to the terms of the credit card agreement. A condition of your account is your granting us a security interest in your share accounts. By signing below you grant us a security interest in all individual and joint shares and/or deposit accounts you have with us now and in the future to secure your credit card account. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to this security interest. When you are in default we may apply the balance in these accounts to any amounts due under the credit card agreement.

X _____  DATE *2-7-02*
APPLICANT'S SIGNATURE

X _____ (SEAL)
OTHER SIGNATURE        DATE

| FOR CREDIT UNION USE ONLY | ☐ APPROVED ☐ DECLINED | NO. OF CARDS _____ CREDIT LIMIT $ _____ | CREDIT CARD NUMBER _____ |
|---|---|---|---|
| | | CREDIT COMMITTEE OR LOAN OFFICER SIGNATURE | |

© CUNA MUTUAL GROUP, 1995, 2001, ALL RIGHTS RESERVED
TO ORDER: 1-800-356-5012

**DETACH AND RETURN THIS APPLICATION TO YOUR CREDIT UNION**

ACAV30 5/01
22640cvcx

# Exhibit  3

# Exhibit  3



PO Box 70099
Reno, NV 89570-0099
(775) 829-2070



## VISA CREDIT CARD AGREEMENT

In this Agreement the words "you" and "your" mean each and all of those who agree to be bound by this Agreement; "Card" means the VISA credit card and any duplicates, renewals, or substitutions the Credit Union issues to you; "Account" means your VISA credit card line of credit account with the Credit Union, and "Credit Union" means the Credit Union whose name appears on this Agreement or anyone to whom the Credit Union transfers this Agreement.

1.  **Using Your Account.** If you are approved for an Account, the Credit Union will establish a line of credit for you and notify you of your credit limit. You agree that your credit limit is the maximum amount (purchases, cash advances, finance charges, plus "other charges") that you will have outstanding on your Account at any time. If you are over your credit limit, you must pay the amount you are over before payments will begin to restore your credit limit. You may request an increase in your credit limit only by a method acceptable to the Credit Union. The Credit Union has the right to reduce your credit limit, refuse to make an advance and/or terminate your Account at any time for any reason not prohibited by law.

2.  **Using Your Card.** You may use your Card to make purchases from merchants and others who accept VISA Cards. In addition, you may obtain cash advances from the Credit Union and from other financial institutions that accept VISA Cards, and from some automated teller machines (ATMs). (Not all ATMs accept VISA Cards.) To obtain cash advances from an ATM, you must use the Personal Identification Number (PIN) that is issued to you for use with your Card. You agree that you will not use your Card for any transaction that is illegal under applicable federal, state, or local law.

3   **Responsibility.** You agree to pay all charges (purchases and cash advances) to your Account that are made by you or anyone whom you authorize to use your Account. You also agree to pay all finance charges and other charges added to your Account under the terms of this Agreement or another agreement you made with the Credit Union. If this is a joint Account, Section 17 below also applies to your Account.

4.  **Finance Charges.** New purchases posted to your account during a billing cycle will not incur a finance charge for that billing cycle if you had a zero or credit balance at the beginning of that billing cycle or you paid the entire New Balance on the previous cycle's billing statement by the Payment Due Date of that statement; otherwise a finance charge will accrue from the date a purchase is posted to your account. To avoid an additional finance charge on the balance of purchases, you must pay the entire New Balance on the billing statement by the Payment Due Date of that statement. A finance charge begins to accrue on cash advances from the date you get the cash advance or from the first day of the billing cycle in which the cash advance is posted to your account, whichever is later.

    The finance charge is calculated separately for purchases and cash advances. For purchases, the finance charge is computed by applying the monthly periodic rate to the average daily balance of purchases. To get the average daily balance of purchases, we take the beginning outstanding balance of purchases each day, add any new purchases, and subtract any payments and/or credits. This gives us the daily balance of purchases. Then, we add all the daily balances of purchases for the billing cycle together and divide the total by the number of days in the billing cycle. This gives us the average daily balance of purchases.

    For cash advances, the finance charge is computed by applying the monthly periodic rate to the average daily balance of cash advances. To get the average daily balance of cash advances, we take the beginning outstanding balance of cash advances each day, add in any new cash advances, and subtract any payments and/or credits that we apply to the cash advance balance. This gives us the daily balance of cash advances. Then, we add all the daily balances of cash advances for the billing cycle together and divide the total by the number of days in the billing cycle. This gives us the average daily balance of cash advances.

    For our VISA Silver Card, the monthly periodic rate for purchases is .9583% - 1.75% which is an **ANNUAL PERCENTAGE RATE of 11.5% - 21%.** The monthly periodic rate for cash advances is .9583% - 1.75%, which is an **ANNUAL PERCENTAGE RATE of 11.5% - 21%.**

    For our VISA Classic Card, the monthly periodic rate for purchases is 1.083% -1.75% which is an **ANNUAL PERCENTAGE RATE of 13% - 21%.** The monthly periodic rate for cash advances is 1.083% -1.75%, which is an **ANNUAL PERCENTAGE RATE of 13 - 21%.**

    The ANNUAL PERCENTAGE RATE is subject to change on the 1st statement date during the first month of each calendar quarter (January,

April, July, October) to reflect any change in the Index and will be determined by the Prime Rate on the last Wednesday of each quarter as published in *The Wall Street Journal* "Money Rates" table rounding to the nearest ¼% and adding 6% (Silver) or 10% (Classic). The **ANNUAL PERCENTAGE RATE will never be less than 11.5% (Silver) or 13% (Classic) nor greater than 21%.** Any increase in the ANNUAL PERCENTAGE RATE will take the form of additional payments shown as Total Minimum Payments on the statement. Cash advances will be charged percentage points above the variable rate. If the Index is no longer available, the credit union will choose a new index which is based upon comparable information.

5.  **Other Charges.** The following other charges (fees) will be added to your Account, as applicable:

    a.  **Annual Fee:** You will be charged an annual fee of $15.00 on the first statement you receive after your account is opened. Each year following, the annual fee will be added to your account during the same month that you were first charged the fee. The fee will be charged each year until your account is closed and paid in full.

    b.  **Over-the-Credit-Limit Fee:** If the outstanding daily balance of your account exceeds your established credit limit, you will be charged $20.00 each billing cycle that your balance exceeds your credit limit.

    c.  **Late Payment Fee:** We however the right to charge a late payment fee of $20.00 to your account each billing payment that the minimum monthly payment is not received 10 days after the due date.

    d.  **Return Check Fee:** If a check or share draft used to make a payment on your account is returned unpaid, you will be charged a fee of $20.00 for each item returned.

    e.  **Card Replacement Fee:** You will be charged $8.00 for each replacement card that is issued to you for any reason.

    f.  **Document Copy Fee:** You will be charged $5.00 for each copy of a sales draft or statement that you request (except when the request is made in connection with a billing error made by the credit union).

    g.  **Collection Costs:** You agree to pay all costs of collecting the amount you owe under this Agreement, including court costs and reasonable attorney's fees.

6.  **Payments.** Each month you must pay at least the minimum payment shown on your statement by the date specified on the statement or no later than twenty-five (25) days from the statement closing date, whichever is later. If your statement says the payment is "Now Due," your payment is due no later than twenty-five (25) days from the statement closing date. You may pay more frequently, pay more than the minimum payment or pay the Total New Balance in full. If you make extra or larger payments, you are still required to make at least the minimum payment each month your Account has a balance (other than a credit balance). The minimum payment is 2.5% of your Total New Balance, or $25.00, whichever is greater, plus the amount of any prior minimum payments that you have not made, and any amount you are over your credit limit. The Credit Union also has the right to demand immediate payment of any amount by which you are over your credit limit.

7.  **Payment Allocation.** Subject to applicable law, your payments may be applied to what you owe the Credit Union in any manner the Credit Union chooses.

8.  **Security Interest.** If you give the Credit Union a specific pledge of shares by signing a separate pledge of shares, your pledged shares will secure your Account. You may not withdraw amounts that have been specifically pledged to secure your Account until the credit union agrees to release all or part of the pledged amount. In addition, your Account is secured by all other shares you have in any individual or joint account with the Credit Union, except for shares in an Individual Retirement Account or in any other account that would lose special tax treatment under state or federal law if given as security. These other shares may be withdrawn unless you are in default under this agreement. You authorize the Credit Union to apply the balance in your individual or joint share accounts to pay any amounts due on your Account if you should default. Collateral securing other loans you have with the Credit Union may also secure this loan, except that a dwelling will never be considered as security for this Account, notwithstanding anything to the contrary in any other agreement.

9.  **Default.** You will be in default if you fail to make any minimum payment or other required payment by the date that it is due. You will be in default if you break any promise you make under this Agreement. You will be in default if you die, file for bankruptcy or become insolvent, that is, unable to pay your obligations when they become due. You will be in default if you make any false or misleading statements in any credit

CONTINUED ON REVERSE SIDE

application or credit update. You will be in default if something happens that the Credit Union believes substantially reduce your ability to repay what you owe.

When you are in default, the Credit Union has the right to demand immediate payment of your full Account balance without giving you notice. If immediate payment is demanded, you agree to continue paying finance charges, at the periodic rate charged before default, until what you owe has been paid, and any shares that were given as security for your Account may be applied towards what you owe.

10. **Liability for Unauthorized Use-Lost/Stolen Card Notification.** You agree to notify us immediately, orally or in writing at PO Box 70099, Reno, NV 89570-0099 or telephone (775) 829-2070 Monday through Friday 8:00 A.M. to 5:00 P.M. or (800) 991-4964 twenty four (24) hours a day, seven (7) days a week, of the loss, theft, or unauthorized use of your Credit Card. You may be liable for the unauthorized use of your Credit Card. You will not be liable for unauthorized use that occurs after you notify us of the loss, theft, or possible unauthorized use. You will have no liability for unauthorized purchases made with your credit card, unless you are grossly negligent in the handling of your card. In any case, your liability will not exceed $50.

11. **Changing or Terminating Your Account.** The Credit Union may change the terms of this Agreement from time to time. Notice of any change will be given in accordance with applicable law. If permitted by law and specified in the notice to you, the change will apply to your existing Account balance as well as to future transactions.

Either you or the Credit Union may terminate this Agreement at any time, but termination by you or the Credit Union will not affect your obligation to pay the Account balance plus any finance and other charges you owe under this Agreement. You are also responsible for all transactions made to your Account after termination, unless the transactions were unauthorized.

The Card or Cards you receive remain the property of the Credit Union and you must recover and surrender to the Credit Union all Cards upon request or upon termination of this Agreement whether by you or the Credit Union. The Credit Union has the right to require you to pay your full Account balance at any time after your Account is terminated, whether it is terminated by you or the Credit Union. If this is a joint Account, Section 17 of this Agreement also applies to termination of the Account.

12. **Credit Information.** You authorize the Credit Union to investigate your credit standing when opening or reviewing your Account. You authorize the Credit Union to disclose information regarding your Account to credit bureaus and creditors who inquire about your credit standing.

13. **Returns and Adjustments.** Merchants and others who honor your Card may give credit for returns or adjustments, and they will do so by sending the Credit Union a credit slip which will be posted to your Account. If your credits and payments exceed what you owe the Credit Union, the amount will be applied against future purchases and cash advances. If the credit balance amount is $1 or more, it will be refunded upon your written request or automatically after six (6) months.

14. **Additional Benefits/Card Enhancements.** The Credit Union may from time to time offer additional services to your Account, such as travel accident insurance, at no additional cost to you. You understand that the Credit Union is not obligated to offer such services and may withdraw or change them at any time.

15. **Foreign Transactions.** Purchases and cash withdrawals made in foreign countries and foreign currencies will be debited from your account in U.S. dollars. The conversion rate to dollars will be determined in accordance with the operating regulations established by VISA International. Currently the currency conversion rate used to determine the transaction amount in U.S. dollars is generally either a government-mandated rate or the wholesale rate in effect the day before the transaction processing date, increased by one percentage point. The currency conversion rate used on the processing date may differ from the rate that would have been used on the purchase date or cardholder statement posting date.

16. **Merchant Disputes.** The Credit Union is not responsible for the refusal of any merchant or financial institution to honor your Card. The Credit Union is subject to claims and defenses (other than tort claims) arising out of goods or services you purchase with the Card if you have made a good faith attempt but have been unable to obtain satisfaction from the merchant or service provider, and (a) your purchase was made in response to an advertisement the Credit Union sent or participated in sending to you; or (b) your purchase cost more than $50 and was made in your state or within one hundred (100) miles of your home.

17. **Joint Accounts.** If this is a joint Account, each person on the Account must sign the Agreement (by signing on the application). Each of you will be individually and jointly responsible for paying all amounts owed under this Agreement. This means that the Credit Union can require any one of you individually to repay the entire amount owed under this Agreement. Each of you authorizes the other(s) to make purchases or cash advances individually. Any one of you may terminate the Account and the termination will be effective as to all of you.

18. **Entire Agreement.** This is the entire contract which applies to all transaction to your Account even though the sales, cash advances, credit or other slips you sign or receive may contain different terms.

19. **No Waiver.** The Credit Union can delay enforcing any of its rights any number of times without losing them.

20. **Statements and Notices.** Statements and notices will be mailed to you at the most recent address you have given the Credit Union. Notice sent to any one of you will be considered notice to all.

21. **Final Expression.** This Agreement is the final expression of the terms and conditions of this VISA line of credit between you and the Credit Union. This written Agreement may not be contradicted by evidence of any alleged oral agreement.

22. **Copy Received.** You acknowledge that you have received a copy of this Agreement.

23. **Signatures.** By signing in the Signature area of the application form that was attached to this Agreement when you received it, you agree to the terms of this Agreement. You should detach this Agreement from the application and retain it for your records.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than sixty (60) days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or share draft account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three (3) business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply an unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten (10) days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two (2) limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within one hundred (100) miles of your current mailing address; and
(b) The purchase price must have been more than $50

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

# Exhibit  4

# Exhibit  4



**WASHOE CREDIT UNION**
5200 Neil Road
P.O. Box 70099
Reno, Nevada  89570



**Open-End Voucher**

## BORROWER INFORMATION

| | | | |
|---|---|---|---|
| BORROWER 1 NAME | ACCOUNT NUMBER | AMOUNT REQUESTED | DATE |
| DEBORAH L DUMLAO | 000050738003 - 0 | $ 6,000.00 | 02/03/2005 |

| BORROWER 1 ADDRESS | HOME TELEPHONE NUMBER | SOCIAL SECURITY NUMBER | PURPOSE: SIGNATURE |
|---|---|---|---|
| 225 E SURGE ST<br>RENO, NV  89506-0000 | 775-972-4956 | 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 | |

| BORROWER 2 NAME | ACCOUNT NUMBER | DEPOSIT CHECK IN ACCOUNT NUMBER/OTHER: |
|---|---|---|
| RANDOLPH DUMLAO | | |

| BORROWER 2 ADDRESS | SOCIAL SECURITY NUMBER | CHECK PAYABLE TO: |
|---|---|---|
| 225 E SURGE ST<br>RENO, NV  89506-0000 | 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 | REPAYMENT METHOD:  CASH |

**CREDIT UNION USE**

## REPAYMENT TERMS

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS: | OTHER FEES (Amount and Description) | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|
| .026027% | 9.500 % | Fixed | $ | $ 6,000.00 |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $ 6,000.00 | $ 192.13 | 03/03/2005 | Monthly | $ | $ .00 |

## SIGNATURES

By signing below, by endorsing the proceeds check or by using the amount advanced and deposited into your share/share draft account you agree to make payments as disclosed above in accordance with the terms of your LOANLINER Plan.

| | | |
|---|---|---|
| _Deborah L. Dumlao_ (SEAL) 2-3-05 | | _Randolph H. Dumlao_ (SEAL) 2-3-05 |
| BORROWER 1 SIGNATURE    DATE | | BORROWER 2 SIGNATURE    DATE |

## FOR CREDIT UNION USE ONLY

| REQUESTED | MEMBER PAYS PREMIUM FOR: | CHECK NUMBER: | | BRANCH NUMBER: |
|---|---|---|---|---|
| DATE<br>02/03/2005 | APPROVED<br>DENIED (Adverse Action Notice Sent) | PLAN/SUBACCOUNT NO.: 0 | | PROCESSED BY: KW |

| | APPROVED LIMITS: | SIGNATURE | LINE OF CREDIT | OTHER | OTHER | DEBT RATIO/SCORE BEFORE  AFTER |
|---|---|---|---|---|---|---|
| | | | $ | $ | $ | |

LOAN OFFICER COMMENTS

| SIGNATURES: | | |
|---|---|---|
| X                              2/3/05 | X | |
| DATE | | DATE |

# LOANLINER®
# Addendum

Washoe Credit Union
5200 Neil Road
P. O. Box 70099
Reno, Nevada 89570

**INSTRUCTIONS** This addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement. Please keep this attached to your LOANLINER® Credit Agreement.

The **ANNUAL PERCENTAGE RATES**, corresponding daily periodic rates and amount and due date of payments for each loan subaccount are shown below. If there is no payment schedule, the amount and due date of payments will be determined at the time of each advance and disclosed on the Advance Request Voucher. Other charges that may be imposed are also shown below (i.e., late charges, filing fees, collection costs).

| EFFECTIVE DATE | REPLACES ADDENDUM DATED | PLAN NUMBER |
|---|---|---|
| 2/3/05 | | |

| Loan Subscription Description/Approximate Term | Daily Periodic Rate | PRESENT ANNUAL PERCENTAGE RATE | Your minimum payment is calculated after each advance as described below: |
|---|---|---|---|
| Overdraft Protection | 0.041096% | 15.00% | Overdraft Protection : Your |
| Signature Advances | 0.027397% | 10.00% | Minimum Monthly Payment |
| (2003 –2004 -2005 Autos, Trucks & Motorcycles) | | | is 3% of the outstanding balance |
| New/Used Vehicles – up to 72 months | 0.013014% | 4.75% | or $50.00 whichever is higher. |
| | | | For all other advances, the amount |
| (1995 – 2002 Autos, Trucks & Motorcycles) | | | and due date of your payment will |
| Used Vehicles-up to 72 months | 0.014384% | 5.25% | be established at the time of each |
| | | | advance and will be disclosed on |
| New/Used RV's & Boats   up to 60 months | 0.020548% | 7.50% | the voucher accompanying the |
| New/Used RV's & Boats – 61–120 months | 0.023287% | 8.50% | advance. |
| 50/50 Share Signature Secured | 0.014795% | 5.40% | |
| Share Secured | 0.011507% | 4.20% | Overdarft Protection will be given |
| | | | for the amount of the overdraft. |

**CERTIFICATE SECURED:** The **ANNUAL PERCENTAGE RATE (APR)** will be the dividend rate being paid on the Certificate offered as security (Index) plus 3.50%. The Certificate must be renewed until the advance is completely paid. Failure to renew will result in default under the plan. When the certificate is renewed the **APR** will change to reflect the new dividend rate. Any increase in the **APR** and daily periodic rate will result in more payments of the same amount until what you owe has been paid in full. The present annual percentage rate will be disclosed on the voucher at the time of the advance. The rate will never be greater than the rate allowed by Nevada State law.

**CERTIFICATE SECURED-VARIABLE RATE CERTIFICATE:** The **ANNUAL PERCENTAGE RATE (APR)** will be the dividend rate being paid on the Certificate offered as security (Index) plus 3.5%. The Certificate must be renewed until the Advance is completely paid. Failure to renew will result in default under the plan. The rates are subject to change monthly on the first day of each month. Any increase in the **APR** will result in more payments of the same amount until what you owe has been paid. The present annual percentage rate and daily periodic rate will be disclosed on the voucher at the time of the advance. The rate will never be greater than allowed by Nevada State law.

**SHARE SECURED:** The **ANNUAL PERCENTAGE RATE (APR)** for share secured advances will be the dividend rate being paid on regular shares on the date of the advance (index) plus 3.5%. If there is an existing balance on the date of the new advance, the existing balance will be added to the new advance and the entire balance will be at the new **APR**. The rates are subject to change monthly on the first day of each month to reflect any change in the index. Any increase in the **APR** will take the form of more payments of the same amount until what you owe has been repaid. The rate will never be greater than allowed by Nevada State law.

**LATE CHARGES:** A late charge of 20% of the interest amount will be assessed when payments are 10 days past due. The minimum charge will be $10.00.

**COLLECTION COSTS:** You promise to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable Attorney fees.

**MINIMUM PAYMENT:** Your minimum payment will never be less than $50.00 monthly.

**FILING FEES:** You will be charged a lien-filing fee at the time of an advance if the credit union takes a security interest in your collateral. The amount of the filing fee will be based upon the amount of the fee required by state law for the credit union to obtain a lien on collateral taken as security.

**RATE REDUCTION:** You will receive 25 basis point reduction in the **ANNUAL PERCENTAGE RATE (APR)** for any loan category if you qualify under the Advantage Account Program. If, for some reason you become ineligible for the program, your annual percentage rate will revert back to the note rate at the time of the loan.

**TIERED PRICING:** Your **ANNUAL PERCENTAGE RATE (APR)** may vary depending on your credit score. Please ask a Loan Officer for details regarding how your tiered rate is determined. The rate will be established at each advance and will be disclosed on the voucher accompanying the advance.

SIGNED _____   SIGNED _____

Revised 1-01-05

**WASHOE CREDIT UNION**
5200 Neil Road
P.O. Box 70099
Reno, Nevada 89570

**LOANLINER**

## CREDIT INSURANCE

You can protect your financial future by signing up for **voluntary** credit insurance below. Enroll by simply indicating your preference in the "Credit Insurance Application" section below. Your credit union will be happy to explain the various insurance options and coverage. The cost is reasonable.

**CUNA MUTUAL GROUP**
*CUNA Mutual Insurance Society*

P.O. Box 391 · 5910 Mineral Point Road
Madison, WI 53701-0391
Phone: 800/937-2644

### CREDIT INSURANCE APPLICATION & SCHEDULE

"You" or "Your" means the member and the joint insured (if applicable).

Credit insurance **is voluntary and not required in order to obtain this loan.** You may select any insurer of your choice. You can get this insurance only if you check the "yes" box below and sign your name and write in the date. The rate you are charged for the insurance is subject to change. You will receive written notice before any increase goes into effect. You have the right to stop this insurance by notifying your credit union in writing. Your signature below means you agree that:

• If you elect insurance, you authorize the credit union to add the charges for insurance to your loan each month.

• You are eligible for disability insurance only if you are working for wages or profit for 25 hours a week or more on the date of any advance. If you are not, that particular advance will not be insured until you return to work. If you are off work because of temporary layoff, strike or vacation, but soon to resume, you will be considered at work.

• You are eligible for insurance up to the Maximum Age for Insurance. Insurance will stop when you reach that age.

**NOTE: THE LIFE AND DISABILITY INSURANCE CONTAINS CERTAIN BENEFIT EXCLUSIONS, INCLUDING A PRE-EXISTING CONDITION EXCLUSION. PLEASE REFER TO YOUR CERTIFICATE FOR DETAILS.**

| YOU ELECT THE FOLLOWING INSURANCE COVERAGE(S) | YES | NO | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | COVERED MEMBER |
|---|---|---|---|---|
| Single Credit Disability | | X | $ .175 | |
| Single Credit Life | | X | $ .070 | |
| Joint Credit Life | | X | $ .123 | |

If you are totally disabled for more than __30__ days, then the disability benefit will begin with the __31st__ day of disability.

| MEMBER | INSURANCE MAXIMUMS | DISABILITY | LIFE |
|---|---|---|---|
| DEBORAH L DUMLAO | MONTHLY TOTAL BENEFIT | $ 750.00 | N/A |
| ACCOUNT NUMBER | INSURABLE BALANCE PER LOAN ACCOUNT | $ 50,000.00 | $ 50,000.00 |
| 000050738003 | MAXIMUM AGE FOR INSURANCE | 70 | 70 |

SECONDARY BENEFICIARY (If you desire to name one)

| DATE | BORROWER'S DATE OF BIRTH | DATE | CO-BORROWER'S DATE OF BIRTH |
|---|---|---|---|
| | 09/17/1957 | | 09/12/1962 |

SIGNATURE OF BORROWER ELIGIBLE TO BE INSURED

*Deborah L Dumlao*

DEBORAH L DUMLAO

SIGNATURE OF JOINT INSURED (CO-BORROWER)
(Only required if JOINT CREDIT LIFE coverage is selected)

*Randolph H. Dumlao*

RANDOLPH DUMLAO

APP.825-0288NV

**WASHOE CREDIT UNION**
5200 Neil Road
P.O. Box 70099
Reno, Nevada 89570

**LOANLINER.**

## Open-End Plan Signatures

| HOW TO APPLY: | - Complete all sections<br>- Sign on signature line<br>- Return completed form to credit union<br>- An incomplete or unsigned form may delay processing |
|---|---|

| BORROWER 1 NAME | DEBORAH L OUMLAO | ACCOUNT NUMBER | 000050738003 |
|---|---|---|---|
| BORROWER 2 NAME | RANDOLPH DUMLAO | ACCOUNT NUMBER | |

### CREDIT AGREEMENT

This LOANLINER Credit Agreement, which includes the Truth in Lending Disclosures, will be referred to as "the Plan." The Plan documents include this agreement and an Addendum. "You", "your" and "borrower" mean any person who signs the Plan. "Credit Union", "we", "our" and "us" mean the Credit Union whose name appears on the Plan or anyone to whom the Credit Union transfers its rights under the Plan.

**1. HOW THIS PLAN WORKS** -- This is an open-end, multi-featured credit plan. We anticipate that, from time to time, you will borrow money (called "advances") under the Plan. **We are not required to make advances to you under the Plan and can refuse a request for an advance at any time.** The Addendum describes the different types of credit (called "subaccounts") available under the Plan, the current interest rate for each subaccount expressed as a daily periodic rate and corresponding annual percentage rate and other charges. It may also have other terms and a schedule for determining the payment amounts.

**2. CREDIT LIMIT** -- We may, but do not have to, establish a credit limit on certain subaccounts. If a credit limit is set for a subaccount, you promise not to exceed the established credit limit. If you exceed the credit limit, you promise to repay immediately the amount which exceeds the credit limit.

**3. REPAYMENT** -- You promise to repay all amounts you owe under the Plan plus interest. Payments are due on the last day of the month unless we set a different day at the time of an advance. If the Addendum has no payment schedule for a subaccount, your payment will be determined at the time of each advance. Payments must include any amount past due and any amount by which you have exceeded any credit limit you have been given for a sub-account. You may repay all or part of what you owe at any

time without any prepayment penalty. Even if you prepay, you will still be required to make the regularly scheduled payments unless we agree in writing to a change in the payment schedule. If you have a joint share draft account, you will be responsible for paying all overdraft advances obtained by a joint holder of the share draft account. Unless otherwise required by law, payments will be applied to amounts owed under the Plan, in the manner the Credit Union chooses.

**4. PLAN ACCESS** -- You can obtain credit advances in any manner authorized by us. If we allow you to use your ATM/Debit card to access the Plan, you may be liable for the unauthorized use of your ATM/Debit card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. If you believe your ATM/Debit card has been lost or stolen, immediately inform the Credit Union by calling or writing us at the telephone number or address that appears elsewhere in the Plan. If the card is used to obtain unauthorized advances directly from the Plan, your liability will not exceed $50.00. If the unauthorized withdrawal is from a share draft account, your liability is governed by the Regulation E disclosures you received at the time you received your ATM/Debit card, even if the withdrawal results in an advance being made from your overdraft subaccount.

**5. FINANCE CHARGE** -- The dollar amount you pay for money borrowed is called a "finance charge" and begins on the date of each advance. A finance charge will be computed separately for each separate balance under the Plan. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made a payment) is multiplied by the applicable daily periodic rate. The sum of these amounts is the finance charge owed. The balance used to compute the finance charge is the unpaid balance each day after

(continued on next page)

### SIGNATURES

1. You have received and read the LOANLINER Credit Agreement, including the Addendum ("Agreement") and a Credit Insurance Certificate. By signing below you agree to be bound by the terms of the Agreement.

2. You grant us a security interest in all individual and joint share and/or deposit accounts you have with us now and in the future to secure what you owe under the LOANLINER Credit Agreement.

When you are in default, you authorize us to apply the balance in these accounts to any amounts due. Shares and deposits in an Individual Retirement Account, and any other account that would lose special tax treatment under state or federal law if given as security, are not subject to the security interest you have given in your shares and deposits.

| X _(signature)_ | (SEAL) | 12/3/05 |
|---|---|---|
| BORROWER 1 SIGNATURE | | DATE |

| X _(signature)_ | (SEAL) | 12/3/05 |
|---|---|---|
| BORROWER 2 SIGNATURE | | DATE |

| Washoe Credit Union | | DEBORAH L DUMLAO | | Date  02/03/2005 |
| --- | --- | --- | --- | --- |

## CREDIT AGREEMENT

payments and credits to that balance have been subtracted and any additions to the balance have been made. In addition to interest, we may charge other finance charges which are disclosed on the Addendum. If the interest rate is a variable interest rate, the Addendum explains how the variable interest rate works.

**6. SECURITY** -- You pledge as security for the Plan all shares and dividends and, if any, all deposits and interest in all joint and individual accounts you have with us now and in the future. If a specific dollar amount is pledged for an advance, we will freeze shares in that account to the extent of the outstanding balance for the advance. Otherwise, your pledged shares may be withdrawn unless you are in default. **If credit union has a federal charter:** Statutory Lien -- If you are in default on a financial obligation to us, federal law gives us the right to apply the balance of shares and dividends in all individual and joint accounts you have with us to satisfy that obligation. After you are in default, we may exercise this right without further notice to you. (We have a federal charter if our name includes the term "Federal Credit Union.") **If credit union is state chartered, except in Ohio, Rhode Island, and Massachusetts:** We have a statutory lien on the shares and dividends and, if any, the deposits and interest in all individual and joint accounts you have with us and may exercise our rights under the lien to the extent permitted by state law. (We are state chartered if our name does not include the term "Federal Credit Union.") **For all borrowers: The statutory lien and/or your pledge will allow us to apply the funds in your account(s) to what you owe when you are in default.** The statutory lien and your pledge do not apply to any Individual Retirement Account or any other account that would lose special tax treatment under state or federal law if given as security.

Additional security for the Plan may be required at the time of an advance. If a subaccount identifies a type of property (such as "New Cars") you must give that type of property as security when you get an advance under that subaccount. A subaccount name such as "Other Secured" means you must provide security acceptable to us when you obtain an advance under that subaccount. ~~The security will secure all amounts owed under the Plan and all other loans you have now or in the future, except any loan secured by your principal dwelling.~~ Property securing other loans you have with us may also secure the Plan.

**7. PROPERTY INSURANCE** -- You will be required to purchase property insurance on certain types of security that you give for advances. You may purchase the property insurance from anyone you choose that is acceptable to the Credit Union.

**8. CREDIT INSURANCE** -- Credit life and/or credit disability insurance is optional under the Plan. If you qualify for and purchase the insurance from us, you authorize us to add the insurance premiums monthly to your loan balance and charge you interest on the entire balance. If you elect credit insurance, your payments may increase or the period of time necessary to repay your advance may be extended. The credit insurance rates may change during the Plan. If the rates change, we will provide any notices required by applicable law.

**9. PERIODIC STATEMENT** -- On a regular basis you will receive a statement showing all transactions under the Plan during the period covered by the statement. Statements and notices will be sent to you at the most recent address you have given us in writing. Unless applicable law requires notice to each joint borrower, notice to any one of you will be notice to all.

**10. JOINT ACCOUNTS** -- If this is a joint account, each of you is individually and jointly responsible for paying all amounts owed. That means we can enforce our rights under the Plan against any one of you individually or against all of you together. If you give us inconsistent instructions, we can refuse to follow your instructions. Unless our written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). Any joint accountholder may terminate the Plan by giving us prior written notice. If any of you terminate the Plan, the Plan is terminated for all of you. You remain liable individually and jointly for all advances incurred before termination.

**11. FEES AND CHARGES** -- If you give us a security interest in certain types of property, we may charge you a filing fee to perfect our interest in the property. If we do, the amount of the fee will be disclosed to you at the time you obtain an advance. We may also charge you other fees in connection with the Plan. Our current fees are disclosed on the Addendum and will be added to your loan balance unless you pay them in cash.

**12. UPDATING CREDIT INFORMATION** -- You promise that you will promptly give us written notice if you move, change your name or employment, or if any other information you provided to us changes. Upon our request, you also agree to provide us updated financial information.

**13. WAIVER** -- We can delay or waive enforcing any of our rights under this Plan, including your obligation to make timely payments, without losing our right to enforce the terms of the Plan at a later time. If the law makes any term(s) of the Plan unenforceable, the other terms will remain in effect.

**14. DEFAULT** -- *The following paragraph applies to borrowers in Idaho, Kansas, Maine and state chartered credit unions lending to South Carolina borrowers:* You will be in default if you do not make a payment of the amount required when it is due. You will also be in default if we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

*The following paragraph applies only to borrowers in Wisconsin:* You will be in default if you fail to make a payment when due two times during any 12 month period. You will be in default if breaking any promise made under the Plan materially impairs your ability to repay what you owe. You will also be in default if breaking any promise made under a Security Agreement made in connection with an advance, materially impairs the condition, value, or protection of or our right in any property you gave as security.

*The following paragraph applies only to borrowers in Iowa:* You will be in default if you are more than 10 days late in making a payment. You will also be in default if you do not comply with the terms of the Plan and your failure to comply materially impairs any property you gave as security or your ability to repay what you owe under the Plan.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers:* You will be in default if you do not make a payment of the amount required when it is due. You will be in default if you break any promise you made

(Continued on next page)

| Washoe Credit Union | DEBORAH L DUMLAO | Date 02/03/2005 |
|---|---|---|

## CREDIT AGREEMENT

under the Plan or if anyone is in default under any security agreement made in connection with an advance under the Plan. You will be in default if you die, file for bankruptcy, become insolvent, if you make any false or misleading statements in any credit application or update of credit information, or if something happens we believe may substantially reduce your ability to repay what you owe. You will also be in default under the Plan if you are in default under any other loan agreement with us.

**15. ACTIONS AFTER DEFAULT --** *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia, Wisconsin and state chartered credit unions lending to South Carolina borrowers:* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and to federally chartered credit unions lending to South Carolina borrowers:* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

*The following paragraph applies to all borrowers:* If immediate payment is demanded, you will continue to pay interest until what you owe has been repaid at the applicable interest rates in effect or, if applicable, at the default rate disclosed on the Addendum. If a demand for immediate payment has been made, your shares and/or deposits can be applied towards what you owe as provided in the Section above called "Security". We can also exercise any other rights given by law when you are in default, and any rights we have under any Security Agreements you have with us.

**16. CANCELLING OR CHANGING THE PLAN --** *The following paragraph applies only to state chartered credit unions lending to Illinois borrowers:* We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change to the interest rate or other charges will apply to future advances.

*The following paragraph applies only to borrowers in Wisconsin:* We can change the terms of the Plan from time to time in accordance with Section 422.415 of the

Wisconsin Statutes. You will be notified of any change in terms. An increase in the daily periodic rate under a variable interest rate is not considered a change in terms under the Plan. We can cancel the entire Plan or any part of the Plan at any time. You may cancel the Plan at any time by giving us prior written notice. Your obligation to pay the unpaid balances under the terms of the Plan continues whether you or the credit union cancel the Plan, except to the extent that your liability is limited by Section 422.4155 of the Wisconsin Statutes.

*The following paragraph applies only to borrowers in Iowa:* We can change the terms of the Plan from time to time after giving you any advance notice required by law. A change that increases the rate of finance charge or other charge, that increases the amount of your payments, or that otherwise adversely affects existing balances will apply to existing balances only if you agree to the change or you use the Plan after receiving notice that your use of the Plan means you agree the change applies to existing balances.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to Illinois borrowers:* We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change in the interest rate will apply to future advances, and at our discretion, and subject to any requirements of applicable law, will also apply to unpaid balances.

*The following paragraph applies to all but Wisconsin borrowers:* An increase in the daily periodic rate under a variable interest rate is not considered a change in terms under the Plan. We can cancel the entire Plan or any part of the Plan at any time. You may cancel the Plan at any time by giving us prior written notice. Your obligation to pay the unpaid balances under the terms of the Plan continues whether you or the Credit Union cancel the Plan.

**17.** *The following is required by Vermont law --* **NOTICE TO CO-SIGNER -- YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**18. NOTICE TO UTAH BORROWERS:** This written agreement is a final expression of the agreement between you and the credit union. This written agreement may not be contradicted by evidence of any oral agreement.

## FOR CREDIT UNION USE ONLY

| DATE | APPROVED | APPROVED LIMITS: | SIGNATURE | LINE OF CREDIT | OTHER | OTHER | DEBT RATIO/SCORE BEFORE    AFTER |
|---|---|---|---|---|---|---|---|
| 02/03/2005 | DENIED (Adverse Action Notice Sent) | | $ | $ | $ | $ | |

LOAN OFFICER COMMENTS:

SIGNATURES:

X _____         X _____

_____ DATE         _____ DATE

# Exhibit  5

# Exhibit  5



**LOANLINER.**

FRONTIER FINANCIAL
C R E D I T   U N I O N

5200 Neil Rd.
Post Office Box 70099
Reno, NV 89570

**Open-End Voucher
and Security Agreement**

## BORROWER INFORMATION

| BORROWER 1 NAME | ACCOUNT NUMBER | AMOUNT REQUESTED | DATE |
|---|---|---|---|
| DEBORAH L DUMLAO | 000050738003 - 1 | $ 16,285.00 | 10/16/2006 |

| BORROWER 1 ADDRESS | HOME TELEPHONE NUMBER | SOCIAL SECURITY NUMBER | PURPOSE: REF1 AUTO |
|---|---|---|---|
| 225 E SURGE ST<br>RENO, NV 89506-8717 | 775-972-4956 | 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 | |

| BORROWER 2 NAME | ACCOUNT NUMBER | DEPOSIT CHECK IN ACCOUNT NUMBER/OTHER: |
|---|---|---|
| RANDOLPH DUMLAO | | |

| BORROWER 2 ADDRESS | SOCIAL SECURITY NUMBER | |
|---|---|---|
| 225 E SURGE ST<br>RENO, NV 89506-8717 | 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 | CHECK PAYABLE TO: |

REPAYMENT METHOD: **CASH**

| BORROWER 1 EMPLOYER NAME | WORK TELEPHONE NUMBER | DATE HIRED | GROSS MONTHLY SALARY |
|---|---|---|---|
| WASHOE MED | 7759826809 | | $ 2,163.20 |

| BORROWER 2 EMPLOYER NAME | WORK TELEPHONE NUMBER | DATE HIRED | GROSS MONTHLY SALARY |
|---|---|---|---|
| | | | $ 3,120.00 |

NOTICE: YOU DON'T HAVE TO INCLUDE INCOME FROM CHILD SUPPORT, SEPARATE
MAINTENANCE, OR ALIMONY UNLESS YOU WANT THE CREDIT UNION TO CONSIDER IT.

SOURCE OF OTHER INCOME                    OTHER MONTHLY INCOME
                                          $

## REPAYMENT TERMS

**FOR CREDIT UNION USE ONLY**

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS: | OTHER FEES (Amount and Description) | NEW BALANCE THIS SUB ACCOUNT |
|---|---|---|---|---|
| .017808% | 6.500 % | Fixed | $ | $ 16,285.00 |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $ 16,285.00 | $ 320.00 | 11/26/2006 | Monthly | $ | $ .00 |

## SECURITY OFFERED | CONSUMERS' CLAIMS AND DEFENSES -- IF CHECKED, SEE PARAGRAPH 6 FOR NOTICE

THE ADVANCE IS SECURED BY YOUR SHARES, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY:

| PROPERTY/MODEL | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|
| ACURA RSX S SPORT | 2002 | JH4DC53072C041890 | $ 16,285.00 | |
| | | | $ | |
| | | | $ | |
| | | | $ | |

| PLEDGE OF SHARES<br>AND/OR DEPOSITS $ | ACCOUNT<br>NUMBER | PLEDGE OF SHARES<br>AND/OR DEPOSITS $ | ACCOUNT<br>NUMBER |
|---|---|---|---|

## SIGNATURES

By signing below, by endorsing the proceeds check or by using the amount advanced and deposited into your share/share draft account you agree:
1. To make and be bound by the terms of this Security Agreement including the cross collateral clause;
2. The Credit Union will rely on the information above and your credit report to make a credit decision;
3. To make payments as disclosed above in accordance with the terms of your Plan.

| X _Randolph H. Dumlao_ (SEAL) 10-16-0 | X _Deborah L Dumlao_ (SEAL) 10-16-06 |
|---|---|
| BORROWER 1 SIGNATURE                DATE | BORROWER 2 SIGNATURE                DATE |

| X (SEAL) | X (SEAL) |
|---|---|
| SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower)                DATE | SIGNATURE ☐ OWNER OF COLLATERAL (Other than a Borrower)                DATE |

| Frontier Financial Credit Union | DEBORAH L DUMLAO | Date 10/16/2006 |

# SECURITY AGREEMENT



In this agreement all references to "credit union," "we," "our," or "us" mean the credit union whose name appears on this agreement and anyone to whom the credit union assigns or transfers this agreement. All references to "you," "your," and "borrower" mean each person who signs this agreement. All references to "the advance" mean the amount in the box labeled "Amount Advanced" on page one. All references to "the Plan" mean the Credit Agreement under which the advance was obtained. Some of the provisions of this agreement apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Louisiana and Wisconsin.

**1. THE SECURITY FOR THE PLAN** -- By signing this security agreement in the signature area or under the statement referring to this agreement which is on the back of the check you receive for the advance, you give us what is known as a security interest in the property described in the "Security Offered" section on page one. The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the advance or any extensions, renewals or refinancings of the advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**2. WHAT THE SECURITY INTEREST COVERS** -- The security interest secures the advance and any extensions, renewals or refinancings of the advance. It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the advance and not other amounts you owe.

**3. OWNERSHIP OF THE PROPERTY** -- You promise that you own the property you give as security or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**4. PROTECTING THE SECURITY INTEREST** -- If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property. You promise to pay all costs, including but not limited to any attorney fees, we incur in protecting our security interest and rights in the property, to the extent permitted by applicable law.

**5. USE OF PROPERTY** -- Until the advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**6. CONSUMERS' CLAIMS AND DEFENSES NOTICE** -- The following paragraph applies only when the box on page one is checked.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

**7. PROPERTY INSURANCE, TAXES AND FEES** -- You must maintain property insurance on all property that you give as security under the Plan. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to endorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy. You also promise to pay all taxes and fees (like registration fees) due on the property.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of our loan agreements or may engage others to do so. The insurance charge added to the advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of the advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8. NOTICE** -- If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property. **The insurance will not be liability insurance and will not satisfy any state financial responsibility or no fault laws.**

**9. DEFAULT** -- You will be in default if you break any promise you make under this agreement. You will also be in default if you are in default under the Plan. If you are pledging property, but have not signed the Plan, you will be in default if anyone is in default who has signed the Plan.

**10. WHAT HAPPENS IF YOU ARE IN DEFAULT** -- *The following paragraph applies to borrowers in Colorado, District of Columbia, Iowa, Kansas, Maine, Massachusetts, Missouri, Nebraska, West Virginia and state chartered credit unions lending to South Carolina borrowers.* When you are in default and after expiration of any right you have under applicable state law to cure your default, we can demand immediate payment of the entire unpaid balance under the Plan without giving you advance notice.

*The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers.* When you are in default, we can require immediate payment (acceleration) of the entire unpaid balance under the Plan. You waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

(Continued on next page)

| Frontier Financial Credit Union | DEBORAH L DUMLAO | Date 10/16/2006 |

*The following paragraphs apply to all borrowers.*

You agree the Credit Union has the right to take possession of the property given as security under the Plan, without judicial process, if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property not covered by this agreement that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

If you have agreed to pay the Advance, you will also have to pay any amount that remains unpaid after the sale money has been applied to the unpaid balance of the Advance and to what you owe under this agreement. You agree to pay interest on that amount at the same rate as the Advance, or, if applicable, at the default rate disclosed on the Addendum, until that amount has been paid.

**11. DELAY IN ENFORCING RIGHTS AND CHANGES IN THE PLAN** -- We can delay enforcing any of our rights under this agreement any number of times without losing the ability to exercise our rights later. We can enforce this agreement against your heirs or legal representatives. If we change the terms of the Plan, you agree that this agreement will continue to protect us.

**12. CONTINUED EFFECTIVENESS** -- If any part of this agreement is determined by a court to be unenforceable, the rest will remain in effect.

**13. NOTICE TO NORTH DAKOTA BORROWERS PURCHASING A MOTOR VEHICLE** ---THE MOTOR VEHICLE IN THIS TRANS-ACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, YOU MAY HAVE TO PAY THE DIFFERENCE.

**14. NOTICE FOR ARIZONA OWNERS OF PROPERTY** -- It is unlawful for you to fail to return a motor vehicle that is subject to a security interest, within thirty days after you have received notice of default. The notice will be mailed to the address you gave us. It is your responsibility to notify us if your address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

**THE PROPERTY DESCRIPTION ON PAGE ONE IS PART OF THIS AGREEMENT. NOTICE: SIGN THIS AGREEMENT ON PAGE ONE.**

| FOR CREDIT UNION USE ONLY | | | | | |
|---|---|---|---|---|---|
| REQUESTED: | MEMBER PAYS PREMIUM FOR: | | CHECK NUMBER: | | BRANCH NUMBER: |
| | | | PLAN/SUBACCOUNT NO.: 1 | | PROCESSED BY: KW |
| DATE 10/16/2006 | APPROVED<br>DENIED (Adverse Action Notice Sent) | APPROVED LIMITS: $ | SIGNATURE $ | LINE OF CREDIT $ | OTHER | OTHER $ | DEBT RATIO/SCORE BEFORE    AFTER |
| LOAN OFFICER COMMENTS: | | | | | |
| SIGNATURES: X | | 10/16/06 DATE | X | | DATE |

**LOANLINER®**

Nevada Financial Credit Union
52__ ___il Road
P. _. Box 70099
Reno, Nevada 89570

# Addendum

**INSTRUCTIONS**  This addendum is incorporated into and becomes a part of your LOANLINER® Credit Agreement. Please keep this attached to your LOANLINER® Credit Agreement.

The **ANNUAL PERCENTAGE RATES**, corresponding daily periodic rates and amount and due date of payments for each loan subaccount are shown below. If there is n payment schedule, the amount and due date of payment will be determined at the time of each advance and disclose on the Advance Request Voucher. Other charges that ma be imposed are also shown below (i.e., late charges, filing fees, collection costs).

| EFFECTIVE DATE | REPLACES ADDENDUM DATED | PLAN NUMBER |
|---|---|---|
| 10/11/06 | | |

| Loan Subscription Description/Approximate Term | Daily Periodic Rate | PRESENT ANNUAL PERCENTAGE RATE | Your minimum payment is calculated after each advance as described below: |
|---|---|---|---|
| Overdraft Protection | 0.041096% | 15.00% | Overdraft Protection : Your |
| Signature Advances | 0.027397% | 10.00% | Minimum Monthly Payment |
| (2004 –2005 -2006 Autos, Trucks & Motorcycles) | | | is 3% of the outstanding balance |
| New/Used Vehicles – up to 72 months | 0.017808% | 6.50% | or $50.00 whichever is higher. |
| | | | For all other advances, the amount |
| (1996 – 2003 Autos, Trucks & Motorcycles) | | | and due date of your payment will |
| Used Vehicles-up to 72 months | 0.017808% | 6.50% | be established at the time of each |
| | | | advance and will be disclosed on |
| New/Used RV's & Boats – up to 60 months | 0.020548% | 7.50% | the voucher accompanying the |
| New/Used RV's & Boats – 61-120 months | 0.023287% | 8.50% | advance. |
| 50/50 Share Signature Secured | 0.014795% | 5.40% | |
| Share Secured | 0.011644% | 4.25% | Overdraft Protection will be given for the amount of the overdraft. |

**CERTIFICATE SECURED:** The ANNUAL PERCENTAGE RATE (APR) will be the dividend rate being paid on the Certificate offered as security (Index) plus 3.50%. The Certificate must be renewed until the advance is completely paid. Failure to renew will result in default under the plan. When the certificate is renewed the APR will change to reflect the new dividend rate. Any increase in the APR and daily periodic rate will result in more payments of the same amount until what you owe has been paid in full. The present annual percentage rate will be disclosed on the voucher at the time of the advance. The rate will never be greater than the rate allowed by Nevada State law.

**CERTIFICATE SECURED-VARIABLE RATE CERTIFICATE:** The ANNUAL PERCENTAGE RATE (APR) will be the dividend rate being paid on the Certificate offered as security (Index) plus 5%. The Certificate must be renewed until the advance is completely paid. Failure to renew will result in default under the plan. This account will be changed monthly on the first day of each month. Any increase in the APR will result in more payments of the same amount until what you owe has been repaid. The present annual percentage rate and daily periodic rate will be disclosed on the voucher at the time of the advance. The rate will never be greater than the rate allowed by Nevada State law.

**SHARE SECURED:** The ANNUAL PERCENTAGE RATE (APR) will be the dividend rate being paid on regular shares on the date of the advance plus 2%. This account is variable and subject to change. Any existing subscription balance will be added to the new advance and the entire amount will be at the new APR. The APR is subject to change monthly on the first day of each month to reflect any change in the index. Any increase in the APR will take the form of more payments of the same amount until what you owe has been repaid. The rate will never be greater than allowed by Nevada State law.

**LATE CHARGES:** A late charge of 20% of the interest amount will be assessed when payments are 10 days past due. The minimum charge will be $10.00.

**COLLECTION COSTS:** You promise to pay all costs of collecting the amount you owe under this agreement including court costs and reasonable Attorney fees.

**MINIMUM PAYMENT:** Your minimum payment will never be less than $50.00 monthly.

**FILING FEES:** You will be charged a lien-filing fee at the time of an advance if the credit union takes a security interest in your collateral. The amount of the filing fee will be based upon the amount of the fee required by state law for the credit union to obtain a lien on collateral taken as security.

**RATE REDUCTION:** You will receive 25 basis point reduction in the ANNUAL PERCENTAGE RATE (APR) for any loan category if you qualify under the Advantage Account Program. If, for some reason you become ineligible for the program, your annual percentage rate will revert back to the note rate at the time of the loan.

**TIERED PRICING:** Your ANNUAL PERCENTAGE RATE (APR) may vary depending on your credit score. Please ask a Loan Officer for details regarding how your tiered rate is determined. The rate will be established at each advance and will be disclosed on the voucher accompanying the advance.

SIGNED _Candace H Dunken_     SIGNED _____

Revised 02-27-06

MST103  6826LL

## Guaranteed Asset Protection (GAP)

I/We have been offered and explained the benefits of GAP and decline to purchase the coverage. In the event my vehicle is stolen and never recovered or a total loss and my insurance company pays less than the amount of my installment sales contract/loan/lease, I understand I will be fully responsible for any deficiency balance on my _02 Acura RSX S Sport_

Year/Make/ Model/ Vin #

VIN # JH4DC53072CC41290

50738003(1)
Loan/Acct. #

Deborah Dumlao     10-16-06
Borrower Name          Date

_[signature]_     10-16-06
Borrower Signature     Date

Randolph Dumlao     10-16-06
Co-Borrower Name          Date

_Randolph Dumlao_     10-16-06
Co-Borrower Signature     Date

# Exhibit  6

# Exhibit  6

```
                        02/01/10                                                    PAGE    27
  SCR 269 SHARE DRAFT DEP FROM CHECKS 002  GL 739200  DR     74.74  EFD 020110


006-002  DT 02/01/10 17:18:22 TXN 234 CAN 03278 DISBURSED AMT            BY 50-002           STN 32006U24
  ACCT     53480207-002 TYP 74 OB      710.80  NB        0.80  AMT     710.00- EFD 020110 PVD 020110
  ACCT     53480007-002 TYP 30 OB     9012.71  NB     9722.71  AMT     710.00  EFD 020110 PVD 020110


006-002  DT 02/01/10 17:26:36 TXN ALD CAN 03279 DISBURSED AMT            BY 52-002           STN 32006U25
ROCESSED TXN:  279  SHARE WITHDRAWAL TO GENERAL LEDGER
  ACCT     53774002-002 TYP 01 OB      538.54  NB      418.54  AMT     120.00- EFD 020110 PVD 012210
  SCR 279 SHARE WITHDRAWAL TO CASH DI 002  GL 739200  CR    120.00  EFD 020110


006-002  DT 02/01/10 17:33:55 TXN ALD CAN 03280 DISBURSED AMT            BY 52-002           STN 32006U25*IB TXN
ROCESSED TXN:  269  SHARE DEPOSIT FROM GENERAL LEDGER
  ACCT     51519206-001 TYP 79 OB        3.28  NB      113.28  AMT     110.00  EFD 020110 PVD 012510
  SCR 269 SHARE DRAFT DEP FROM CASH R 002  GL 739200  DR    110.00  EFD 020110


006-002  DT 02/01/10 17:41:18 TXN ALD CAN 03281 DISBURSED AMT            BY 50-002           STN 32006U24
ROCESSED TXN:  269  SHARE DEPOSIT FROM GENERAL LEDGER
  ACCT     50497004-002 TYP 74 OB     1804.70  NB     2404.70  AMT     600.0D EFD 020110 PVD 020110
  SCR 269 SHARE DRAFT DEP FROM CASH R 002  GL 739200  DR    600.00  EFD 020110


006-002  DT 02/01/10 17:43:39 TXN ALD CAN 03282 DISBURSED AMT            BY 50-002           STN 32006U24*IB TXN
ROCESSED TXN:  269  SHARE DEPOSIT FROM GENERAL LEDGER
  ACCT      9865104-001 TYP 30 OB     3944.57  NB     4094.57  AMT     150.00  EFD 020110 PVD 020110
  SCR 269 SHARE DRAFT DEP FROM CHECKS 002  GL 739200  DR    150.00  EFD 020110


006-002  DT 02/01/10 17:44:27 TXN ALD CAN 03283 DISBURSED AMT            BY 50-002           STN 32006U24
ROCESSED TXN:  703  GL JOURNAL VOUCHER ENTRIES - CURRENT MONTH
 ALD 9865104 C M N DONATION        002  GL 801700  CR      1.00  EFD 020110
 ALD 9865104 C M N DONATION        002  GL 739200  DR      1.00  EFD 020110
```
`006-002  DT 02/01/10 17:47:39 TXN ALD CAN 03284 DISBURSED AMT            BY 50-002           STN 32006U24`
```
ROCESSED TXN:  661  LOAN PAYMENT BY CASH
  ACCT     50738003-002 NOTE    1 OB     7050.01  NB        0.00  AMT    7104.33  EFD 020110 PVD 121809
   PRIN     7050.01- INT      54.32  FINE       0.00


006-002  DT 02/01/10 17:52:12 TXN ALD CAN 03285 DISBURSED AMT            BY 51-002           STN 32006U27*IB TXN
ROCESSED TXN:  279  SHARE WITHDRAWAL TO GENERAL LEDGER
 ACCT      2382903-001 TYP 74 OB     1644.11  NB      644.11  AMT    1000.00- EFD 020110 PVD 020110
 SCR 279 SHARE DRAFT W/D TO CASH DIS 002  GL 739200  CR   1000.00  EFD 020110


006-002  DT 02/01/10 17:52:52 TXN SBC CAN 03286 DISBURSED AMT            BY 51-002           STN 32006U27
ROCESSED TXN:  703  GL JOURNAL VOUCHER ENTRIES - CURRENT MONTH
 SBC 0 GUEST PAYMENT               002  GL 999200  CR   1000.00  EFD 020110
 SBC 0 GUEST PAYMENT               002  GL 739200  DR   1000.00  EFD 020110


006-002  DT 02/01/10 17:53:52 TXN ALC CAN 03287 DISBURSED AMT     317.00 BY 50-002           STN 32006U24
ROCESSED TXN:  271  SHARE WITHDRAWAL BY CASH
 ACCT     52826002-002 TYP 71 OB     5445.88  NB     5128.88  AMT     317.00- EFD 020110 PVD 012910
   DRAFT NBR   1151              CASH     317.00
```

# Exhibit  7

# Exhibit  7

WebSession 8 Host-to-HTML Servlet    Case 10-05041-gwz    Doc 6    Entered 07/20/10 15:50:16    Page 27 of 28    Page 1 of 1

```
EC01 |    BCP06M    INQUIRY SCREEN (PAGE ONE)    18:16:01 07/08/10  ASF: |
CORP: 071308  ACCT: 443316 2009810059   PROD: VGO 200 ACCT CHARGED OFF 021309
BLK/RCLSS: B7 DT: 033009 TYP/PROC: 10 BUS IND:    L UPD: 14:02 RWJXS7   033009
VIP:    SRCE: 000 SCRE:   0 BILLDY: 10    DTOPN: 021302 ASSOC:
NME1: DEBORAH L DUMLAO        NME2:                      IN COL: 000000
ADR1: PO BOX 7 0099           PRV1: 225 E SURGE ST       CLECTR:
ADR2:                         PCTY: RENO                 CL CLS:
ADR3:                         DT ADD CH: 033009 SSN 1: 526191677 2: 000000000
CITY: RENO                    FIN CHG: S BILL CD: NOFINCHG NO FINANCE CHARGE
ST..: NV  ZIP: 895700099 RLTN ACCT: 0000000050738003 LAN:   MEMO: PEREZ
PREV: 403992 0019855036 ACT: AA STAT: 8 CD FEE: E RENEWDT: 0207 LST REV: 000000
TYPE1: V ISSUED: 0 0 0 0 OUT: 01 ISSDT: 011908 CURR EXPDT: 0911 PRT DUE DAY: 10
TYPE2:   ISSUED: 0 0 0 0 OUT: 00 ISSDT: 000000 PREV EXPDT: 0811 CIT EFF: 000000
 BAL PUR....:   1328.12  CRED LIMIT..:      2500  PREV CYC F/C.:      0.00
 CURR PUR....:     0.00  CASH LIMIT..:      2500  C/ADV FEE....:      0.00
 DEBT PUR ADJ:     0.00  AVAIL CRED..:         0  UNPD ANN FEE.:      0.00
 CRED PUR ADJ:     0.00  AUTH TOTAL..:    283.63- LATE CHARGE..:      0.00
 BBAL CSH....:   1455.51  AUTH COUNT..:        0  MISC FEES....:      0.00
 CURR CSH....:     0.00  AMT LST PAY:     189.00  DT LST PYMT..:   091108
 DEBT CSH ADJ:     0.00  AMT DISPUTE:       0.00  DATE LAST USE:   052508
 CRED CSH ADJ:     0.00  PAST DUE...:    2783.63  DT LST DELINQ:   061510
 PAYMENTS....:     0.00  PAY DUE....:       0.00  DT PYMT DUE..:   071210
 END BAL.....:   2783.63  PR YR INT..:       0.00  CREDIT LMT DT:   000000
 PF KEYS 1=CUST SRCH 4=AUTH INQ 5=SVCS  6=LTRS 7=INQUSR 8=PG2 9=STMT 12=PREV
```

| PF1 | F2 | F3 | F4 | F5 | F6 | F7 | F8 | F9 | F10 | F11 | F12 | F13 | F14 | F15 | F16 | F17 | F18 | F19 | F20 | F21 | F22 | F23 | F24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| PA1 | PA2 | PA3 | | Please Note Keyboard Mapping: F1-F12 mapped to Shift F1-Shift F12 | | | | | | | | Close | SYSREQ | ATTN | Pause | | | | | | Refresh | Enter | |

# Exhibit  3

# Exhibit  3

RECEIVED & FILED

# FILED

'11 AUG -5  P10 :18   NOT FOR PUBLICATION

AUG 05 2011

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

U.S. BANKRUPTCY COURT
MARY A. SCHOTT CLERK

1

2

3            UNITED STATES BANKRUPTCY APPELLATE PANEL

4                         OF THE NINTH CIRCUIT

5   In re:                        )   BAP No.   NV-10-1505-JuHKw
                                  )   BAP No.   NV-11-1011-JuKKw
6   DEBORAH DUMLAO,               )   (Consolidated Appeals)
                                  )   BAP No.   NV-11-1030-JuHKw
7              Debtor.            )   (Cross-Appeals)
    _____)
8   FRONTIER FINANCIAL CREDIT     )   Bk. No.  09-50815
    UNION,                        )
9                                 )   Adv. No. 10-5041
               Appellant,         )
10                                )
    v.                            )
11                                )   M E M O R A N D U M*
    DEBORAH DUMLAO,               )
12                                )
         Appellee/Cross-Appellant )
13  _____)

14           Argued and Submitted on July 21, 2011
                         at Las Vegas

15

16             Filed - August 5, 2011

17     Appeal from the United States Bankruptcy Court
                 for the District of Nevada

18   Honorable John L. Peterson, Bankruptcy Judge, Presiding

19   _____

    Appearances:   Christopher P. Burke, Esq. argued for Appellant
20                  Frontier Financial Credit Union; and Patricia
                    Wilson Hadfield, Esq. argued for Appellee and
21                  Cross-Appellant Deborah Dumlao.

22   _____

    Before:  JURY, HOLLOWELL, and KWAN[1], Bankruptcy Judges.
23

24   _____

25     *    This disposition is not appropriate for publication.
    Although it may be cited for whatever persuasive value it may
26  have (see Fed. R. App. P. 32.1), it has no precedential value.
    See 9th Cir. BAP Rule 8013-1.
27

28     [1]    Hon. Robert N. Kwan, Bankruptcy Judge for the Central
    District of California, sitting by designation.

                              -1-

1    This appeal involves the enforceability of a cross

2    collateral clause contained in a security agreement that was

3    signed prepetition by chapter 7[2] debtor Deborah Dumlao.

4        In a Memorandum Decision and Order, the bankruptcy court

5    granted summary judgment for debtor, finding that appellant,

6    Frontier Financial Credit Union ("FFCU"), violated the § 524

7    discharge injunction because its asserted lien against debtor's

8    car for her Visa credit card debt was unenforceable.  After a

9    separate hearing on debtor's motion for attorney's fees and

10   damages, the court entered a Final Memorandum Of Decision And

11   Order For Judgment which incorporated its previous findings,

12   awarded debtor attorney's fees of $9340 plus costs of $250, and

13   denied her request for damages.

14       FFCU appeals the bankruptcy court's judgment, arguing that

15   the court erred by (1) granting summary judgment for debtor

16   because she never filed a motion for summary judgment;

17   (2) denying FFCU's motion to dismiss or, in the alterative, for

18   summary judgment because the cross collateral clause was valid

19   and enforceable under Nevada's Uniform Commercial Code

20   ("U.C.C."); and (3) awarding debtor attorney's fees and costs

21   for its alleged violation of the discharge injunction.  Debtor

22   cross appeals on the portion of the judgment denying her

23   damages.

24       For the reasons stated, we REVERSE the bankruptcy court's

25

26       [2]    Unless otherwise indicated, all chapter, section and
     rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-
27   1532.  "Rule" references are to the Federal Rules of Bankruptcy
     Procedure and "Civil Rule" references are to the Federal Rules of
28   Civil Procedure.

1   decision granting summary judgment for debtor and REMAND the

2   case to the bankruptcy court for further proceedings consistent

3   with this disposition.

### I.  FACTS

5       Debtor had a credit relationship with FFCU since 2002.

6       On February 7, 2002, debtor obtained a Visa card from FFCU.

7   Paragraph 8 of the Visa Classic Silver Credit Card Agreement

8   provided that the Visa card debt was secured by debtor's shares

9   in an individual or joint account.  It also stated that

10  "[c]ollateral securing other loans you have with the Credit

11  Union may also secure this loan . . . ."  Debtor had no other

12  loans with FFCU at that time.

13      On February 3, 2005, debtor and her husband applied for,

14  and obtained, a signature (unsecured) loan for $6,000 through

15  FFCU's Loanliner program.  Under the Loanliner program, the

16  member signs a credit agreement.  Once the credit agreement has

17  been executed, the member may apply for extensions of credit

18  under the Loanliner Plan (the "Plan").  The Plan provides for

19  the advancement of monies through various subaccounts.  When an

20  advance is made, it is memorialized in a document called an

21  advance request voucher.  A subaccount advance can be unsecured

22  (signature loan) or secured.

23      Paragraph 6 of the credit agreement, which was initialed by

24  debtor and her husband, provided:

25          Additional security for the Plan may be required at
            the time of an advance.  If a subaccount identifies a
26          type of property (such as "New Cars") you must give
            that type of property as security when you get an
27          advance under the subaccount.  A subaccount name such
            as "Other Secured" means you must provide security
28          acceptable to us when you obtain an advance under that

-3-

1   subaccount.  Property you give as security will secure
    all amounts owed under the Plan and all other loans
2   you have with us now or in the Future, except any loan
    secured by your principal dwelling.  Property securing
3   other loans you have with us may also secure the Plan.

4   On October 16, 2006, debtor and her husband borrowed

5   $16,285 from FFCU under the Loanliner program to refinance a

6   2002 Acura RSX Sport vehicle (the "Acura").  In conjunction with

7   the loan, they executed a Loanliner Open-End Voucher and

8   Security Agreement.  Under the heading of "Security Offered,"

9   the advance loan voucher stated:  "[t]he advance is secured by

10  your shares, all property securing other Plan advances and loans

11  received in the past or in the future, and the following

12  property:  Acura RSX S Sport, 2002 . . . ."  The voucher further

13  provided below the "Signatures" heading: "[b]y signing below

14  . . . you agree . . . [t]o make and be bound by the terms of

15  this Security Agreement including the cross collateral clause."

16  Paragraph 2 of the attached Security Agreement provided:

17  What the Security Interest Covers - The security
    interest secures the advance and any extensions
18  renewals or refinancings of the advance.  It also
    secures any other advances you have now or receive in
19  the future under the Plan and any other amounts or
    loans, including any credit card loan, you owe us for
20  any reason now or in the future except any loan
    secured by your principal residence.
21

22  On March 25, 2009, debtor filed her chapter 7 bankruptcy

23  petition.  In Schedule D, debtor listed FFCU as a creditor owed

24  $10,816 secured by the Acura.  In Schedule F, debtor listed FFCU

25  as an unsecured creditor for the $2562 balance owing on her Visa

26  card.  FFCU had notice of debtor's bankruptcy, but did not

27  participate in the proceedings.  On July 8, 2009, debtor

28  received her discharge and a final decree was entered

-4-

1  December 10, 2009.

2  On February 1, 2010, debtor paid off the loan on her Acura

3  in full and made a demand on FFCU to transfer title.  FFCU

4  refused, asserting that the cross collateral clause in the

5  Security Agreement provided that the Acura secured all debt owed

6  to FFCU, including amounts owed on her Visa card.  In a

7  March 10, 2010 letter to debtor's attorney, FFCU stated that

8  unless debtor arranged to make payments on her Visa card, FFCU

9  would repossess her car.  The letter further stated that FFCU

10  was not seeking to collect a debt against debtor personally.

11  On June 11, 2010, the court granted debtor's motion to

12  reopen her bankruptcy case.

13  On June 17, 2010, debtor filed an adversary complaint

14  against FFCU, alleging that her credit card debt was unsecured

15  and discharged in her bankruptcy.  Debtor's complaint was not

16  the model of clarity.  She styled her complaint as stating a

17  claim for relief under § 523(c).  In other words, she alleged

18  that her credit card debt was discharged because FFCU did not

19  object to the dischargeability of the debt under § 523(a)(2),

20  (4), or (6).  The complaint referenced the discharge injunction

21  under the Fourth Cause of Action.  In her prayer for relief

22  debtor requested (1) declaratory relief determining that the

23  Visa card debt was discharged; (2) an injunction prohibiting

24  FFCU from pursuing any further efforts to collect the credit

25  card debt; (3) a writ of mandate compelling FFCU to immediately

26  transfer clear title of the Acura to debtor; (4) damages for the

27  loss of use of the Acura beginning April 1, 2010, and continuing

28  until such time the court issued the injunction; and (5) an

-5-

1   award of attorney's fees and costs.

2       Recognizing that the central issue was whether FFCU's lien

3   on debtor's Acura also secured her credit card debt, i.e., the

4   validity of the cross collateral clause, FFCU moved to dismiss

5   debtor's complaint or, in the alternative, for summary judgment

6   on July 20, 2010.  FFCU argued that the cross collateral clause

7   in the Security Agreement was valid under Nevada Revised Statute

8   ("NRS") 104.9204 so long as the obligations secured by the

9   collateral were within the intent of the parties' agreement.

10  FFCU asserted that the clause was clear and unambiguous and,

11  therefore, valid and enforceable against debtor as a matter of

12  law.

13      Debtor opposed FFCU's motion, arguing that the cross

14  collateral clause was invalid as to consumer goods (her car) and

15  that Nevada's U.C.C. imposed an obligation of good faith, which

16  FFCU breached.[3]  In her opposition, debtor asked the court to

17  deny FFCU's motions or enter judgment for her on the pleadings.

18  She did not file a separate motion requesting judgment on the

19  pleadings under Civil Rule 12(c).[4]

20      Debtor also asserted in a separate statement of undisputed

21  _____

22      [3]   Debtor raised the good faith issue in her opposition to
    FFCU's motion for summary judgment and again at the hearing.
23  Debtor cited NRS 104.1304 which provides: "Every contract or duty
    within the Uniform Commercial Code imposes an obligation of good
24  faith in its performance and enforcement."  NRS 104.1201(t)
    states that "[g]ood faith means honesty in fact and the
25  observance of reasonable commercial standards of fair dealing."
    The bankruptcy court did not address the issue of FFCU's good
26  faith in either of its rulings.

27      [4]   Civil Rule 12(c), incorporated by Rule 7012, states:
    "After the pleadings are closed — but early enough not to delay
28  trial — a party may move for judgment on the pleadings."

                            -6-

1  facts, among other things, that (1) when she applied for her

2  Visa card, FFCU did not inform her that if she were to finance

3  an automobile through FFCU that it would become security for

4  charges made on her Visa card; (2) her signature loan agreement

5  mentioned only her and her husband's deposit/share accounts as

6  security, but did not mention credit card debt; and (3) no one

7  from FFCU asked her or her husband to initial any portion of the

8  car loan Security Agreement nor did anyone tell them that the

9  Acura might be used as security for payment of credit card

10  obligations.

11  On November 3, 2010, the bankruptcy court heard FFCU's

12  motion and took the matter under submission.  On November 30,

13  2010, the court entered its Memorandum Decision and Order

14  granting summary judgment for debtor,[5] finding that the cross

15  collateral clause was unenforceable as a matter of law.  The

16  bankruptcy court's few factual findings make it unclear whether

17  the court properly applied the law.  The court simply stated

18  that it refused to enforce adhesion agreements and their dragnet

19  clauses, but it offered no reasoning for its conclusion.

20  Moreover, the court construed the credit agreement and later

21  Security Agreement as ambiguous because they did not clearly

22  reference the 2002 Visa Classic Silver Credit Card Agreement.

23  As a result of these conclusions, the court found that debtor's

24

25      [5]    We presume the bankruptcy court treated debtor's

26  request for judgment on the pleadings as one for summary judgment
    under Civil Rule 12(d) which states that a motion for judgment on

27  the pleadings must be treated as one for summary judgment when
    matters outside the pleadings are presented to and not excluded

28  by the court.

-7-

1  credit card debt was discharged and that FFCU had violated the

2  § 524 discharge injunction.

3      As a separate ground for invalidating FFCU's lien, the

4  court concluded that FFCU lost its lien rights by not

5  participating in debtor's bankruptcy proceeding or filing a

6  motion for reconsideration of the discharge order under Civil

7  Rule 60(b)(4) (made applicable by Rule 9024) and the holding of

8  United Student Aid Funds, Inc. v. Espinosa, __ U.S. __, 130

9  S.Ct. 1367 (2010).

10     The court scheduled an evidentiary hearing on December 14,

11 2010, to address the issues of debtor's damages and attorney's

12 fees.

13     On December 9, 2010, debtor filed her application for

14 attorney's fees and costs.  Debtor also sought damages of

15 $5,000, arguing that this sum was for a rental car because once

16 she learned FFCU would repossess her car she stopped driving it.

17 The record shows that debtor never rented a car.

18     On December 13, 2010, FFCU filed its opposition, arguing

19 that no sanctions should be imposed due to its good faith belief

20 that its lien on the Acura for the credit card debt was valid.

21 FFCU also alleged that the attorney's fees sought were

22 unreasonable.

23     On December 15, 2010, the bankruptcy court entered its

24 Final Memorandum Of Decision And Order For Judgment.  The

25 court's decision substantially incorporated its previous

26 findings, but the court specifically found that it was not

27 necessary to decide whether the agreements at issue were

28 adhesion contracts because the credit card debt was discharged.

-8-

1    The court further found that debtor's request for attorney's

2    fees and costs was reasonable and awarded them in full, but

3    denied her request for damages.

4        FFCU timely appealed and debtor cross appealed on the issue

5    of damages.

                        **II.   JURISDICTION**

7        The bankruptcy court had jurisdiction over this proceeding

8    under 28 U.S.C. §§ 1334 and 157(b)(2)(K).  We have jurisdiction

9    under 28 U.S.C. § 158.[6]

                          **III.   ISSUE**

11       Whether the bankruptcy court erred in granting summary

12   judgment for debtor and denying FFCU's motion to dismiss or, in

13   the alternative, for summary judgment.[7]

                    **IV.   STANDARDS OF REVIEW**

15       A grant or denial of summary judgment by a bankruptcy court

16   is reviewed de novo.  Thrifty Oil Co. v. Bank of Am. Nat'l Trust

17   & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003); Prestige Ltd.

---

20       [6]    We have jurisdiction to review both the grant of
     summary judgment to debtor and the denial of summary judgment to
21   FFCU, because "[t]he grant of summary judgment [to debtor] is a
     final order . . . ."  Rogers v. County of San Joaquin, 487 F.3d
22   1288, 1294 (9th Cir. 2007) (citing Jones-Hamilton Co. v. Beazer
     Materials & Servs., Inc., 973 F.2d 688, 694 (9th Cir. 1992)).

24       [7]    We do not include a separate statement of issues
     included in FFCU's appeal; i.e., whether the court erred in
25   granting summary judgment in favor of debtor when she never filed
     a motion and whether the court erred in awarding debtor
26   attorney's fees for FFCU's violation of the discharge injunction
     nor do we include a separate statement on debtor's cross appeal
27   regarding the court's denial of her request for damages.  Those
     issues are mooted by our reversal of the bankruptcy court's
28   decision to grant debtor summary judgment.

                              -9-

1   P'ship v. E. Bay Car Wash Partners (In re Prestige

2   P'ship-Concord), 234 F.3d 1108, 1112-14 (9th Cir. 2000).

3       State law controls the construction of a contract. Flavor

4   Dry, Inc. v. Lines (In re James E. O'Connell Co. Inc., 799 F.2d

5   1258, 1260 (9th Cir. 1986). Although contract interpretation

6   involves mixed questions of law and fact, the application of

7   contractual principles is a matter of law. Circle K Corp. v.

8   Collins (In re Circle K Corp.), 98 F.3d 484, 486 (9th Cir.

9   1996). We review a bankruptcy court's legal conclusions and

10   application of state law de novo. Id.

11                **V. DISCUSSION**

12       In applying our de novo review on summary judgment, we must

13   determine, viewing the evidence in the light most favorable to

14   the nonmoving party, whether there are genuine disputes as to

15   any material facts and whether the bankruptcy court correctly

16   applied the relevant substantive law. Graulty v. Brooks (In re

17   Bishop, Baldwin, Rewald, Dillingham & Wong, Inc.), 819 F.2d 214,

18   215 (9th Cir. 1987). There are no disputed material facts

19   relevant to the limited issue we decide in this appeal. Whether

20   the cross collateral clause in the Security Agreement was valid

21   and enforceable under NRS 104.9204 is a question of law.

22       Nevada adopted the revised U.C.C., effective July 1, 2001.[8]

23   Nevada's version of U.C.C. § 9-204 on after-acquired property

24

25       [8]   U.C.C. § 1-103(a)(3) states that the underlying purpose

26   of the U.C.C. was to make uniform the law among the various
     jurisdictions. All fifty states have adopted the 2001 revision

27   of Article 9. Kenneth Misken, Survey of Legislation: 2001
     Arkansas General Assembly: Revised Article 9, 24 U. Ark. Little

28   Rock L. Rev. 415, 415 (2002).

1  and future advances provides that "[a] security agreement may

2  provide that collateral secures . . . future advances or other

3  value, whether or not the advances or value are given pursuant

4  to commitment." NRS 104.9204. Official Comment 5 explains this

5  provision:

6      [C]ollateral may secure future as well as past or
       present advances if the security agreement so
7      provides. This is in line with the policy of this
       Article toward security interests in after-acquired
8      property under subsection (a). Indeed, the parties
       are free to agree that a security interest secures any
9      obligation whatsoever. Determining the obligations
       secured by collateral is solely a matter of construing
10     the parties' agreement under applicable law. This
       Article rejects the holdings of cases decided under
11     former Article 9 that applied other tests, such as
       whether a future advance or other subsequently
12     incurred obligation was of the same or a similar type
       or class as earlier advances and obligations secured
13     by the collateral.

14     Through adoption of the revised U.C.C. § 9-204, Nevada

15  gives effect to cross collateral clauses. However, there is no

16  controlling precedent or persuasive authority from Nevada's

17  state courts (or federal courts) on the construction or validity

18  of such clauses under the revised statute. Therefore, we are

19  left to predict how the state's highest appellate court would

20  rule if presented with the issue before us. Vestar Dev. II, LLC

21  v. Gen. Dynamics Corp., 249 F.3d 958, 960 (9th Cir. 2001).

22     We have previously recognized the usefulness of the

23  Official Comments in interpreting the U.C.C. See NetBank, FSB

24  v. Kipperman (In re Commer. Money Ctr., Inc.), 350 B.R. 465, 475

25  (9th Cir. BAP 2006). The directive of Official Comment 5 is

26  sufficiently clear — the enforceability of a cross collateral

27  clause is based on contract, which requires us to construe the

28  parties' agreement under applicable law. See also NRS 104.9201

-11-

1  (a security agreement is effective according to its terms

2  between the parties).

3      Moreover, the comment provides that revised U.C.C. § 9-204

4  rejects the holdings of cases decided prior to its adoption that

5  have applied other tests, such as the relationship of the loans

6  test or the reliance on the security test.  See Auza, 181 B.R.

7  69-70 (finding Arizona law to employ both these tests).

8  Therefore, we are not convinced that debtor's citations to Auza,

9  In re Kim, 256 B.R. 793 (Bankr. S.D. Cal. 2000), In re Wollin,

10  249 B.R. 555 (Bankr. D. Or. 2000), or In re Gibson, 234 B.R. 776

11  (Bankr. N.D. Cal. 1999) have any bearing on the outcome of this

12  appeal, as all those cases were decided prior to the adoption of

13  the revised U.C.C. § 9-204.  See In re Hobart, 2011 WL 1980332,

14  at *8 (Bankr. D. Idaho 2011) (noting that cross collateral

15  clause would be considered "valid and enforceable as long as the

16  underlying agreement of the parties was clear in expressing such

17  an intent" and rejecting Wollin as controlling authority);

18  Nagata v. HFS Fed. Credit Union (In re Nagata), 2006 WL 2131318,

19  at *2 (Bankr. D. Haw. 2006) (finding that the loan documents

20  debtors signed unambiguously provided that their vehicle would

21  secure their Visa debt and noting Auza, Kim and Wollin were

22  inapplicable under the revised U.C.C.).

23      The case law cited by the bankruptcy court is not

24  inapposite.  See In re Branch, 368 B.R. 80 (Bankr. D. Colo.

25  2006) (relying on the Official Comment to the revised U.C.C. and

26  state contract law, the court found the future advance clause

27  enforceable because it was clear and unambiguous); In re

28  Shemwell, 378 B.R. 166 (Bankr. W.D. Ky. 2007) (enforcing dragnet

-12-

1  clause because it was sufficiently broad, clear and

2  unambiguous); <u>In re Watson</u>, 286 B.R. 594 (Bankr. D.N.J. 2002)

3  (applying revised U.C.C. and finding dragnet clause

4  enforceable).

5      Accordingly, we look to Nevada law governing contracts to

6  ascertain the parties' intent.  Under Nevada law, whether or not

7  a document is ambiguous is a question of law for the court.

8  <u>Margrave v. Doormat Props., Inc.</u>, 878 P.2d 291, 293 (Nev. 1994).

9  "A contract is ambiguous if it is reasonably susceptible to more

10 than one interpretation."  <u>Id.</u>  If there is an ambiguity

11 requiring extrinsic evidence to discern the parties' intent,

12 summary judgment is improper.  <u>Id.</u>  However, an unambiguous

13 contract is construed from the language of the document.

14 <u>Chwialkowski v. Sachs</u>, 834 P.2d 405 (Nev. 1992).

15     The relevant contractual language in the Security Agreement

16 reads:  "[w]hat the Security Interest Covers - The security

17 interest secures . . . any other advances you have now or

18 receive in the future under the Plan and any other amounts or

19 loans, including any credit card loan, you owe us for any reason

20 now or in the future . . . ."  We do not perceive that the

21 clause is reasonably susceptible to more than one

22 interpretation.  It unambiguously states that FFCU holds a

23 security interest in the Acura not only for the advance given,

24 but for any other loans, including any credit card loan.

25 Because the terms of an unambiguous private contract must be

26 enforced irrespective of the parties' subjective intent, <u>see</u>

27 11 R. Lord, <u>Williston on Contracts</u> § 30:4 (4th ed. 1999),

28 "[t]hat is the end of the inquiry."  <u>Nagata</u>, 2006 WL 2131318, at

-13-

1  *2.

2        However, our conclusion does not end the litigation between

3  the parties.  On this record, we are not convinced that FFCU was

4  entitled to summary judgment as FFCU contends on appeal.

5  Although not artfully argued, debtor had raised the issue of

6  whether applying the cross collateral clause would violate the

7  duty of good faith under the U.C.C., which includes a

8  requirement of "reasonable commercial standards of fair

9  dealing."  NRS 104.1201(t).  Good faith is a question of fact.

10  Mitchell v. Bailey and Selover, Inc., 605 P.2d 1138, 1139 (Nev.

11  1980).  The bankruptcy court never addressed this argument when

12  entering summary judgment for debtor.  Therefore, we remand this

13  issue to the bankruptcy court.

14        Moreover, in her statement of undisputed facts, debtor

15  referred to the "fine print" in her Visa card application and

16  she also refers to font sizes and paragraph labels in her brief.

17  These arguments implicate an analysis of adhesion contracts and

18  their enforceability under Nevada law.  Nevada courts define an

19  adhesion contract as "'a standardized contract form offered to

20  consumers . . . on a 'take it or leave it' basis, without

21  affording the consumer a realistic opportunity to bargain.'"

22  Burch v. Second Jud. Dist. Ct. of State ex rel. County of

23  Washoe, 49 P.3d 647, 649 (Nev. 2002).  Under Nevada law, an

24  adhesion contract may be enforced where there is "'plain and

25  clear notification of the terms and an understanding consent[,]'

26  and 'if it falls within the reasonable expectations of the

27  weaker . . . party.'"  Nevada courts do not enforce a contract,

28  or any clause of a contract, that is unconscionable.  Id.

-14-

1    NRS 104.1201(j) provides:

2    'Conspicuous,' with reference to a term, means so
     written, displayed or presented that a reasonable
3    person against which it is to operate ought to have
     noticed it.  Whether a term is 'conspicuous' or not is
4    a decision for the court.  Conspicuous terms include
     the following:
5
     (1) A heading in capitals equal to or greater in size
6    than the surrounding text, or in contrasting type,
     font or color to the surrounding text of the same or
7    lesser size; and

8    (2) Language in the body of a record or display in
     larger type than the surrounding text, or in
9    contrasting type, font or color to the surrounding
     text of the same size, or set off from surrounding
10   text of the same size by symbols or other marks that
     call attention to the language.
11

12       Further, "[i]f the court as a matter of law finds the

13   contract or any clause of the contract to have been

14   unconscionable at the time it was made the court may refuse to

15   enforce the contract, or it may enforce the remainder of the

16   contract without the unconscionable clause . . . ."  See NRS

17   104.2303.  Accordingly, we remand this claim to the bankruptcy

18   court to determine these issues in the first instance.

19       Finally, we note that if the court determines that FFCU had

20   a valid lien on debtor's car which secured her credit card debt,

21   its lien would survive the bankruptcy discharge of the

22   underlying debt without any action by FFCU.  See § 506(d);

23   Cortez v. Am. Wheel, Inc. (In re Cortez), 191 B.R. 174, 178 (9th

24   Cir. BAP 1995) (citing Dewsnup v. Timm, 502 U.S. 410, 418

25   (1992)).  In this regard, the bankruptcy court's reliance on

26   Espinosa to reach a contrary result was misplaced.

27                    VI.  CONCLUSION

28       In sum, we REVERSE the bankruptcy court's grant of summary

-15-

1   judgment for debtor on the limited issue discussed above.

2   However, we decline to enter summary judgment for FFCU.  The

3   bankruptcy court did not address whether the application of the

4   cross collateral clause would violate the duty of good faith or

5   whether the agreements at issue were unenforceable adhesion

6   contracts under Nevada's U.C.C.  Accordingly, we REMAND those

7   remaining claims to the bankruptcy court for further

8   proceedings.

9        Our conclusion renders FFCU's other assignments of error on

10  appeal and debtor's cross appeal moot.

-16-

# Exhibit  4

# Exhibit  4

B8 (Official Form 8) (12/08)

## United States Bankruptcy Court
### District of Nevada

IN RE:

**DUMLAO, DEBORAH**

Debtor(s)

Case No. _____

Chapter **7** _____

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION

**PART A** – Debts secured by property of the estate. *(Part A must be fully completed for **EACH** debt which is secured by property of the estate. Attach additional pages if necessary.)*

| Property No. 1 | |
|---|---|
| **Creditor's Name:**<br>**Citimortgage Inc.** | **Describe Property Securing Debt:**<br>**225 E. Surge Street** |

Property will be *(check one)*:
☐ Surrendered   ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☑ Other. Explain **Retain and pay pursuant to contract** _____ (for example, avoid lien using 11 U.S.C. § 522(f).)

Property is *(check one)*:
☐ Claimed as exempt   ☑ Not claimed as exempt

| Property No. 2 (if necessary) | |
|---|---|
| **Creditor's Name:**<br>**Countrywide Home Loans** | **Describe Property Securing Debt:**<br>**225 E. Surge Street** |

Property will be *(check one)*:
☐ Surrendered   ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☑ Other. Explain **Retain and pay pursuant to contract** _____ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt   ☑ Not claimed as exempt

**PART B** – Personal property subject to unexpired leases. *(All three columns of Part B must be completed for each unexpired lease. Attach additional pages if necessary.)*

| Property No. 1 | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. 2 (if necessary) | | |
|---|---|---|
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

**1** continuation sheets attached *(if any)*

I declare under penalty of perjury that the above indicates my intention as to any property of my estate securing a debt and/or personal property subject to an unexpired lease.

Date:    **March  9, 2009**         */s/ DEBORAH DUMLAO*
                                    Signature of Debtor

                                    _____
                                    Signature of Joint Debtor

© 1993-2009 EZ-Filing Inc [1-800-998-2424] - Forms Software Only

B8 (Official Form 8) (12/08)

## CHAPTER 7 INDIVIDUAL DEBTOR'S STATEMENT OF INTENTION
*(Continuation Sheet)*

**PART A** – Continuation

| Property No. 3 | |
| --- | --- |
| **Creditor's Name:**<br>**Frontier Financial Credit Union** | **Describe Property Securing Debt:**<br>**2004 Acura RSX Type S-105k miles** |

Property will be *(check one)*:
☐ Surrendered  ☑ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☑ Reaffirm the debt
☐ Other. Explain ........................................................ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt  ☑ Not claimed as exempt

| Property No. | |
| --- | --- |
| **Creditor's Name:** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered  ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain ........................................................ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt  ☐ Not claimed as exempt

| Property No. | |
| --- | --- |
| **Creditor's Name:** | **Describe Property Securing Debt:** |

Property will be *(check one)*:
☐ Surrendered  ☐ Retained

If retaining the property, I intend to *(check at least one)*:
☐ Redeem the property
☐ Reaffirm the debt
☐ Other. Explain ........................................................ (for example, avoid lien using 11 U.S.C. § 522(f)).

Property is *(check one)*:
☐ Claimed as exempt  ☐ Not claimed as exempt

**PART B** – Continuation

| Property No. | | |
| --- | --- | --- |
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

| Property No. | | |
| --- | --- | --- |
| **Lessor's Name:** | **Describe Leased Property:** | Lease will be assumed pursuant to 11 U.S.C. § 365(p)(2):<br>☐ Yes ☐ No |

Continuation sheet    **1** of    **1**

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## CERTIFICATE OF SERVICE BY MAIL

Pursuant to Federal Rule of Civil Procedure 5(b), I certify that on the __ day of December, 2013 I deposited for mailing in the United States Post Office in Reno, Nevada, with postage thereon fully prepaid, a true copy of the within OPPOSITION TO MOTION TO REDEEM addressed as follows:

> Patricia Hadfield, Esq.
> Bankruptcy Law Group
> 200 So. Virginia St. 8th Floor
> Reno, Nv 89501

_____
Dolores  Stigall