Patricia Hadfield
Nevada SBN: 10890
BANKRUPTCY LAW GROUP, PC
200 South Virginia Street, 8th Floor
Reno, NV 89501
Tel: (775) 827-9600
Email: PatriciaH@BankruptcyLG.com

Attorney for Debtor
Deborah Dumlao

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

In re:                                              Case No. 09-50815-gwz

DEBORAH DUMLAO,

              Debtor,                  Adv. Proc. No. 10-5041-gwz
_____/

DEBORAH DUMLAO,

              Plaintiff,              REPLY MEMORANDUM TO
                                                    FRONTIER FINANCIAL CREDIT
    vs.                                           UNION'S OPPOSITION TO
                                                    DEBTOR'S MOTION TO REDEEM
FRONTIER FINANCIAL
CREDIT UNION,                                       Hearing Date: February 27, 2014
                                                    Time: 2:00 p.m.
              Defendant.               Courtroom 2
_____/                          The Honorable Bruce T. Beesley

       Pursuant to 11 U.S.C. Section 722, a debtor may remove a creditor's lien by paying the creditor the real value of the property if the debt is a dischargeable consumer debt secured by tangible personal property which has been either exempted by the debtor or abandoned by the trustee. The redemption may occur after a discharge has been entered, and even upon the reopening of a closed case.

1

Defendant Frontier Financial Credit Union [FFCU] has made at least four red herring and/or erroneous arguments in opposition to Debtor's Motion to Redeem:

**Exemption:** First, Defendant argues [at Page 6:19-7:17 of FFCU's Opposition to Redeem] that Debtor cannot bring this present Motion to Redeem because she did not exempt the 2004 Acura RSX in her Chapter 7 Petition. FFCU makes this argument notwithstanding its admission that, "More was owed on the vehicle than it was worth" at the time Debtor filed her Petition. [FFCU's Opposition to Redeem 2:7-10.] As stated in Debtor's Motion to Redeem and her Declaration in support of that motion, and acknowledged without dispute in FFCU's Opposition, when Debtor filed her Chapter 7 Petition on March 25, 2009, her Acura was worth $8,960.00 and was subject to FFCU's secured claim of $10,816.00.

It is a well established premise in bankruptcy that, "There is no need to use exemptions on property the trustee cannot reach, that is, to the extent property is subject to a non-avoidable lien. Only equity in the property over and above the lien need be exempted." Consumer Bankruptcy Law and Practice, Vol. 1 (2009 Ed.), Page 95, Section 7.3.7.2.3.

Thus, there was no need for Debtor to list the Acura as exempted property in her Petition because she had no equity in it at the time she filed.

**Abandonment:** Frontier Financial Credit Union's second red herring argument is that a Motion to Redeem cannot be brought unless the property in question has been abandoned by the Trustee. Trustee Jeri Coppa-Knudson filed her "Chapter 7 Trustee's Report of No Distribution" [Docket No. 14] in May 5, 2009, in which she stated: "Assets Abandoned: $ 183960.00." That is the exact total of the fair market value Debtor listed on Schedule D for her 's residence and the Acura. Ordinarily, once property is abandoned by the trustee, that decision is irrevocable. *In re Tadlock*, 338 B.R. 436 (B.A.P. 10th Cir. 2006). [The exception is for undisclosed property.]

FFCU erroneously argues, [FFCU's Opposition 8:5-7] without any supporting citation, that, "Because the administration is continued, the assets in the case are not abandoned by the earlier closure of the bankruptcy case. For that reason, the Acura is still in this case, and it is not exempt." In fact, the law of the 9th Circuit is absolutely to the contrary. "The act of reopening a case accords no independent relief and does not undo any of the consequences of closing." Property that was listed in the Petition and technically abandoned by the trustee under 11 U.S.C. Section 554( c) "is not automatically reeled back in by virtue of reopening the case" to decide other issues. *In re Menk*, 241 B.R. 896, 914 (9th Cir. BAP 1999).

The only purpose of reopening Debtor Deborah Dumlao's case was to determine the dischargeability of the credit card debt which FFCU claimed was also secured by the Acura. Because FFCU had not raised that issue during the pendency of Debtor's bankruptcy even though the credit card debt had been listed as unsecured on Debtor's Schedule F, and only raised it a month after Debtor paid off the loan and requested her title to the Acura, it was necessary to reopen the bankruptcy case to litigate the validity of that element of FFCU's contract. Doing so did not in any way undue the trustee's act of abandoning the Acura as part of her closing of the Chapter 7 case.

**Timeliness:** FFCU argues that the Motion to Redeem should not be granted because it was not filed for more than two years after the case was reopened. It is FFCU's position that because Ms. Dumlao did not make her Motion to Redeem within 30 days after her Petition was filed, she cannot do so now. That is also contrary to established law. The issue of the timeliness of a Motion to Redeem was discussed in depth in a 2002 case out of the United States Bankruptcy Court for the Central District of Illinois entitled *In re Rodgers*, 273 B.R. 186. There, the creditor opposed Debtor's Motion to Redeem on the basis that the Debtor had not performed as indicated in

its Statement of Intention within the 45-day time limit provided by the statute. The court concluded as follows:

> "[S]ince the options of redemption and reaffirmation require some negotiation with the secured creditor, Section 521(2) requires the debtor to make the first move by affirmatively giving the creditor notice of his intention. The purpose behind Section 521(2) is one of notice. *Irvine,* 192 B.R. at 921. The time limit for performance is the impetus to the debtor to carry out his intention promptly, without undue delay, and gives courts a statutory basis to deal sternly with recalcitrance. The court in *Eagle* rejected the argument that FMCC makes here, holding that a failure by a debtor to timely state an intention to redeem and perform that intention within the forty-five day period mandated by Section 521(2)(B) does not result in loss of the right to redeem. This Court agrees with that conclusion."

The *Rodgers* Court went on to say that the secured creditor is not prejudiced by giving the debtor more time to file a Motion to Redeem, finding that:

> "A secured creditor may file a motion for relief from automatic stay at any time which will, necessarily, push a dilatory debtor to action, as it did in this case. This Court agrees with *Donnell* and with *Irvine,* that a motion for relief from the automatic stay is the most efficient and sensible action for a creditor to take when faced with a dilatory debtor. This is not to say that stay relief should automatically be granted whenever the forty-five day period has expired without performance. As in the case at bar, and in accordance with Section 521(2)(C), it has been and continues to be this Court's practice to permit redemption by a debtor who promptly files a motion to redeem in response to a creditor's motion for relief from the automatic stay. The potential prejudice to the secured creditor in the way of depreciation to its collateral caused by the debtor's delay may be

addressed by adjusting the valuation date or by awarding adequate protection to the creditor. For example, the court in *Eagle* held that the petition date is the proper time for valuing the secured claim for redemption purposes. *In re Eagle,* 51 B.R. at 962. Because the redemption value in this converted case is not determined based upon the vehicle's market value, it is not necessary for the Court to determine the appropriate date for valuation." [A copy of the *Rodgers* decision is attached hereto for the convenience of the Court.]

When Ms. Dumlao filed her Chapter 7 Petition, she also filed a Statement of Intention to retain the Acura and pay off the loan on it. FFCU never required her to sign a reaffirmation agreement.

Ms. Dumlao did not later just change her mind, as did the debtors in the cases cited by FFCU in its opposition. Instead, she fulfilled her Statement of Intent by continuing to timely make the required monthly payments on the loan for six months after her Chapter 7 case was discharged. She then contacted FFCU for a payoff amount, refinanced the Acura through a different financial institution and paid off the balance that FFCU told her was due on the Acura loan. A few weeks later she contacted FFCU to obtain the title to the Acura and only then, for the very first time, did FFCU tell her she would also have to pay off the $2,783.63 credit card debt in order to get the title.

FFCU has not been prejudiced in the least by Debtor's delay in making this Motion to Redeem. Almost four years ago, Ms. Dumlao gave them a cashier's check for the full $7,050.01 they demanded. In fact, the payoff amount combined with all the monthly payments Ms. Dumlao continued to make throughout her bankruptcy and after her discharge until the payoff date was more than the value of the vehicle as stated in her Petition.

It should be noted also that at no time during the adverse proceeding did FFCU raise the issue of the value of Debtor's vehicle. The value of the vehicle was not before the Bankruptcy Appellate Panel – the only issue before the B.A.P. was the validity of the dragnet clause. Neither did FFCU raise the value issue at any time since the B.A.P. ruled. Its position has simply been to hold hostage the title to the Acura until the $2,783.63 is paid by the Debtor.

**Conclusion:** Frontier Financial Credit Union has not raised one sustainable objection to Debtor's Motion to Redeem. Therefore, Debtor requests that this Court enter its order

    A.    Permitting Debtor to redeem the Acura for the February 1, 2010 payoff amount of $7,050.01;

    B.    Finding that at the time of the payoff, there was no collateral in the Acura to secure the credit card balance;

    C.    Finding, therefore, that the credit card balance of $2,562.00 and any subsequently accrued interest thereon, was properly and fully discharged on July 8, 2009; and

    D.    Ordering Frontier Financial Credit Union to turn over clear title to the Acura to Debtor 1ithin 15 days of the date of the Order granting this motion.

DATED: February 21, 2014.

                                                                  /s/ Patricia Hadfield  
                                                                   Patricia Hadfield  
                                                                   Attorney for Debtor

IN RE RODGERS *NO. 97-83608.*

273 B.R. 186 (2002)

*In re Ray RODGERS and Diane J. Rodgers, Debtors.*

United States Bankruptcy Court, C.D. Illinois.

February 7, 2002.

Michael A. Williams, Rock Island, IL, for debtor.

**OPINION**

THOMAS L. PERKINS, Bankruptcy Judge.

In this case that converted from Chapter 13 to Chapter 7, Ford Motor Credit Company ("FMCC") objects to a motion filed by the Debtors, Ray and Diane J. Rodgers ("DEBTORS"), to redeem a 1996 Ford Mustang from FMCC'S lien. FMCC opposes the redemption for two reasons: that the proposed redemption is untimely since the motion for redemption was filed more than forty-five days after the DEBTORS' statement of intention and, that the redemption price should be determined by the vehicle's current value rather than the balance remaining to be paid on the secured claim allowed in the Chapter 13 plan.

A. FACTS

The DEBTORS' amended Chapter 13 plan, confirmed on January 27, 1998, provides that FMCC is "to be paid $13,850.00 plus interest for a total of $14,382.00 secured by a 1996 Ford Mustang, balance unsecured." In June, 2001, two and one-half years into their five year plan, the DEBTORS converted from Chapter 13 to Chapter 7. While the case was in Chapter 13, FMCC received payments totaling $13,485.27, all but $895.73 of FMCC'S allowed secured claim. After converting to Chapter 7, the DEBTORS, pursuant to Section 521(2)(A), filed their statement of intention on July 5, 2001, stating an intent to reaffirm the debt with FMCC secured by the 1996 Ford Mustang. No reaffirmation agreement was filed. On September 17, 2001, FMCC moved for relief from the automatic stay in order to repossess and foreclose its security interest in the vehicle. On October 1, 2001, the DEBTORS filed an objection to FMCC'S motion, followed promptly by a motion for redemption on October 3, 2001, seeking to redeem the Ford Mustang for the sum of $895.73, the remaining balance of FMCC'S secured claim under the confirmed Chapter 13 plan.

FMCC objected to the redemption, asserting that the proposed redemption price was far below both the vehicle's value, alleged to be $11,800.00, and the remaining balance on the original retail installment contract in the amount of $8,198.58. Both parties were given an opportunity to brief the issues. Only FMCC filed a brief, making three alternative arguments. First, the forty-five day period in which debtors have to exercise their intention to redeem secured property or reaffirm a secured debt is mandatory and, since the DEBTORS failed to redeem the Ford Mustang within that time, they lost the right to redeem. Second, if redemption is permitted, the redemption price should be the lesser of the vehicle's current

value or the original contract balance and should not be limited to the remaining balance due on its secured claim provided in the Chapter 13 plan. Third, if redemption is allowed for an amount based upon the remaining Chapter 13 claim balance, because of the accrual of interest on the allowed secured claim during the pendency of the Chapter 13 case, the remaining balance is substantially greater than the $895.73 amount proposed by the DEBTORS.

B. ANALYSIS

In the Seventh Circuit, a Chapter 7 debtor has only two options by which to retain property encumbered by an unavoidable lien: redemption pursuant to 11 U.S.C. § 722 or reaffirmation pursuant to 11 U.S.C. § 524(c). *Matter of Edwards*, 901 F.2d 1383 (7th Cir.1990). A debtor does not have the option of retaining property simply by remaining current on installment payments. *Id.* The *Edwards* decision is premised, in part, upon the mandatory language of subsection (A) of Section 521(2), added to the Bankruptcy Code by the Bankruptcy Amendments and Federal Judgeship Act of 1984.1 Section 521(2), 11 U.S.C. § 521(2), provides as follows:

> 2) if an individual debtor's schedule of assets and liabilities includes consumer debts which are secured by property of the estate — (A) within thirty days after the date of the filing of a petition under chapter 7 of this title or on or before the date of the meeting of creditors, whichever is earlier, or within such additional time as the court, for cause, within such period fixes, the debtor shall file with the clerk a statement of his intention with respect to the retention or surrender of such property and, if applicable, specifying that such property is claimed as exempt, that the debtor intends to redeem such property, or that the debtor intends to reaffirm debts secured by such property; (B) within forty-five days after the filing of a notice of intent under this section, or within such additional time as the court, for cause, within such forty-five day period fixes, the debtor shall perform his intention with respect to such property, as specified by subparagraph (A) of this paragraph; and (C) nothing in subparagraphs (A) and (B) of this paragraph shall alter the debtor's or the trustee's rights with regard to such property under this title;

1. Right to redeem does not expire under Section 521(2)(B).

FMCC points to the mandatory language of Section 521(2)(B) which states that "the debtor *shall* perform his intention" within forty-five days after filing the notice of intent unless the court, for cause, enlarges that time. (Emphasis added). Since the DEBTORS did not redeem within the forty-five day period, and did not obtain an extension, FMCC contends that the DEBTORS thereby lost their right to redeem.2

Since Congress provided no express method of enforcing Section 521(2), *In re Irvine*, 192 B.R. 920, 921 (Bankr.N.D.Ill.1996), the appropriate remedy for a violation is a matter of the court's discretion to be applied on a case-by-case basis. *American Nat. Bank & Trust Co. v. DeJournette*, 222 B.R. 86, 97 (W.D.Va.1998). The court in *In re Donnell*, 234 B.R. 567 (Bankr.D.N.H.1999), reviewed a substantial body of case law and concluded that courts have used the following four remedies:

1. Compelling the debtor to comply with Section 521(2)(B), pursuant to its powers under Section 105(a); 2. Dismissing the case pursuant to Section 707(a); 3. Declaring the relevant debt nondischargeable, pursuant to Section 523(a); or 4. Granting relief from the automatic stay pursuant to Section 362.

234 B.R. at 572.

FMCC relies upon *In re Harris*, 226 B.R. 924 (Bankr.S.D.Fla.1998), where the court dismissed the debtors' case because of their delaying tactics. While the court acknowledged that most debtors do not perform their intention within the time required by Section 521(2)(B), it held that the debtors' refusal to perform their stated intention, or to amend their statement of intention, or to perform another of the alternatives, despite the passage of four months since their statement was filed, amounted to unreasonable delay that justified dismissal under Section 707(a)(1).

Since the debtors in *Harris* did not move to redeem in response to the creditor's motion to compel, the *Harris* court did not address whether the right to redeem is automatically lost upon expiration of the Section 521(2)(B) time period. From this Court's perspective, *Harris* represents a relatively harsh reaction, premised on unusual facts, to an issue that the court acknowledges as routine, that debtors seldom perform their intention within the forty-five day period.3

A recent bankruptcy court decision, noting a split of authority as to whether a debtor's Section 521 duties are mandatory and collecting cases on both sides of the issue, holds that a debtor's failure to perform a stated intent to redeem within the Section 521(2)(B) time period, results in irrevocable loss of the right to redeem. *In re Jones*, 261 B.R. 479 (Bankr.N.D.Ala.2001). This Court does not agree that such a result is intended by Section 521(2).

In determining whether the forty-five day period established by Section 521(2)(B) is the kind of drop-dead, use-it-or-lose-it, wait-one-day-too-long-and-all-is-lost, provision that FMCC claims it is, the starting point is the language of the statute itself. While a statute's use of the word "shall" is ordinarily accorded a mandatory effect, *Lopez v. Davis*, 531 U.S. 230, 231, 121 S.Ct. 714, 148 L.Ed.2d 635 (2001), it does not follow that a debtor's failure to timely perform a stated intent to redeem, results in loss of that option. Statutory construction is a holistic endeavor. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 371, 108 S.Ct. 626, 630, 98 L.Ed.2d 740 (1988). In construing a statute, a court must not be guided by a single sentence or member of a sentence, but should look to the provisions of the whole law, and to its object and policy. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 51, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987).

The statute itself does not specifically provide that a(2)(B) violation precludes redemption and, in fact, provides no express remedy. Subparagraph (C), however, does provide that nothing in subparagraphs (A) and (B), including the mandatory time for performance, shall alter the debtor's rights with regard to the secured property under the Bankruptcy Code. 11 U.S.C. § 521(2)(C). One of those rights is the right of redemption pursuant to Section 722. Accordingly, while the statute provides a time limit for performance in subsection (B), it preserves the right of redemption, even if tardily performed, through subsection (C).

The forty-five day period was the result of a Congressional compromise. Shortly after its enactment, the bankruptcy court in *In re Eagle*, 51 B.R. 959 (Bankr.N.D.Ohio 1985), reviewed the legislative history of Section 521(2) and described the section as a "subdued version" of an earlier bill which would have required the debtor to perform his intention at or prior to the first meeting of creditors, with the result of noncompliance being automatic termination of the Section 362(a) stay allowing the creditor to immediately enforce its lien. The court put the statute in context, as follows:

> The earlier proposed amendment to section 521 indicates a legislative intent to punish the debtor for failure to timely state and perform his intention to redeem or reaffirm. Congress retrenched from that position after debate and compromise and fashioned a procedure which encourages out-of-court compromise between debtor and creditor in restructuring the debt. The new section is not intended to abrogate those substantive rights of exemption and redemption retained by the debtor. The notice and time

limitation components of section 521(2) are intended to facilitate speedy resolution of debt compromise and repayment.

51 B.R. at 962.

In other words, since the options of redemption and reaffirmation require some negotiation with the secured creditor, Section 521(2) requires the debtor to make the first move by affirmatively giving the creditor notice of his intention. The purpose behind Section 521(2) is one of notice. *Irvine*, 192 B.R. at 921. The time limit for performance is the impetus to the debtor to carry out his intention promptly, without undue delay, and gives courts a statutory basis to deal sternly with recalcitrance. The court in *Eagle* rejected the argument that FMCC makes here, holding that a failure by a debtor to timely state an intention to redeem and perform that intention within the forty-five day period mandated by Section 521(2)(B) does not result in loss of the right to redeem. This Court agrees with that conclusion.4

Following conversion, the DEBTORS filed their statement of intention indicating an intent to reaffirm with FMCC. The DEBTORS did not perform and subsequently abandoned that intention. The time for performance expired without the DEBTORS having either moved for enlargement of time or amended their statement to express an intent to redeem.5 In fact, the DEBTORS did not file their motion to redeem until October 3, 2001, ninety days after they filed their statement of intention and forty-five days after expiration of the mandatory period for performance of their intention and only after FMCC moved for relief from stay. Despite violating the letter and spirit of Section 521(2), the DEBTORS' right to redeem is nevertheless preserved by Section 521(2)(C).

This result need not prejudice the rights of a secured creditor with respect to its collateral. A secured creditor may file a motion for relief from automatic stay at any time which will, necessarily, push a dilatory debtor to action, as it did in this case. This Court agrees with *Donnell* and with *Irvine*, that a motion for relief from the automatic stay is the most efficient and sensible action for a creditor to take when faced with a dilatory debtor. This is not to say that stay relief should automatically be granted whenever the forty-five day period has expired without performance. As in the case at bar, and in accordance with Section 521(2)(C), it has been and continues to be this Court's practice to permit redemption by a debtor who promptly files a motion to redeem in response to a creditor's motion for relief from the automatic stay. The potential prejudice to the secured creditor in the way of depreciation to its collateral caused by the debtor's delay may be addressed by adjusting the valuation date or by awarding adequate protection to the creditor. For example, the court in *Eagle* held that the petition date is the proper time for valuing the secured claim for redemption purposes. *In re Eagle,* 51 B.R. at 962. Because the redemption value in this converted case is not determined based upon the vehicle's market value, it is not necessary for the Court to determine the appropriate date for valuation.

2. Redemption price is Chapter 13 claim balance.

A Chapter 7 debtor's right of redemption under Section 722 is a right accorded by the Bankruptcy Code and exists independent of any right of redemption that the debtor may have by contract or under state law. To redeem secured property from the lien of a creditor, the debtor must pay the lienholder "the amount of the allowed secured claim of such holder that is secured by such lien." 11 U.S.C. § 722. An allowed claim of a creditor secured by a lien on estate property "is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim." 11 U.S.C. § 506(a). In other words, the amount of an undersecured creditor's secured claim is tied to the value of its collateral, whereas the amount of an oversecured creditor's secured claim is determined by the balance owed on the debt.6 By basing the redemption price upon the creditor's "allowed secured claim," Section 722 incorporates the secured claim determination process contemplated by Section 506(a).

In Chapter 13 cases, secured claim amounts are determined at confirmation and are based upon the "replacement value" of the collateral at that time. *Associates Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). In an ordinary Chapter 7 case, the redemption price for an automobile is, generally, the lesser of its current wholesale value and the remaining contract balance. *In re Tripplett,* 256 B.R. 594 (Bankr.N.D.Ill.2000). FMCC wants the Court to apply the usual Chapter 7 redemption rule here, which, using FMCC'S numbers, would yield a redemption price in excess of $8,000. The DEBTORS, of course, want the "allowed secured claim" under Section 722 to be determined by using the remaining balance due on FMCC'S Chapter 13 secured claim amount, which is now less than $1,000.

Prior to the 1994 amendments to the Bankruptcy Code, FMCC'S position had some support. *See In re Burba,* 42 F.3d 1388 (6th Cir.1994) (collecting cases). A significant split of authority on this issue was resolved by the addition of Section 348(f) in the Bankruptcy Reform Act of 1994. Section 348(f)(1)(B) now provides, with an exception not pertinent here, as follows:

**(f)(1) [W]hen a case under chapter 13 of this title is converted to a case under another chapter under this title — . . . (B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.**

This Court is aware of only one post-amendment published opinion directly on point. In *In re Archie,* 240 B.R. 425 (Bankr.S.D.Ala.1999), the court held that Section 348(f)(1)(B) compels the conclusion that the secured claim determination made in conjunction with confirmation of the Chapter 13 plan remains in effect for post-conversion redemption purposes thereby precluding a new secured claim determination based upon the current value of the collateral. The language of Section 348(f)(1)(B) is clear and unambiguous. This Court agrees with the court's analysis in *Archie* and holds that, where a creditor's secured claim is determined in a Chapter 13 case that subsequently converts to Chapter 7, in order to redeem under Section 722, the debtor need only pay the remaining Chapter 13 claim balance, regardless of the collateral's current value.

3. The secured claim as allowed in the plan includes interest.

The only remaining issue is the calculation of the balance of the Chapter 13 secured claim. Tracking the language of the plan, the confirmation order provides that FMCC is "to be paid $13,850.00 plus interest for a total of $14,382.00 secured by a 1996 Ford Mustang, balance unsecured." Since no interest rate is stated, this provision must be interpreted as providing for a lump sum interest amount of $532.00, unaffected by the actual timing or amount of the plan payments. FMCC argues that it was entitled to accrue interest at the contract rate of 6.9% and that if the plan payments it received are applied first to interest accruing at that rate and then to principal, the balance remaining to be paid on its secured claim is $3,145.92 as of the date of conversion.

The confirmed plan, however, to which FMCC did not object, does not provide that interest will accrue on the unpaid balance of FMCC'S secured claim at the rate of 6.9% or at any rate. It simply provides that, over the course of the plan, FMCC will be paid a total of $14,382.00, inclusive of interest. Therefore, the computation contemplated by Section 348(f)(1)(B) is performed simply by subtracting $13,485.27, the total payments paid to FMCC by the Chapter 13 Trustee, from $14,382.00, the amount of the allowed secured claim with interest. This subtraction yields a remaining balance of $895.73. The DEBTORS will be permitted to redeem the 1996 Ford Mustang from the lien of FMCC by paying this amount, in full, within thirty days.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

## FOOTNOTES

1. The Seventh Circuit also reasoned that permitting a debtor to retain property simply by keeping up installment payments without a reaffirmation of personal liability would render the Code's reaffirmation provision nugatory and would be contrary to the policy behind the 1984 Amendments of protecting creditors from the risks of quickly depreciating assets and preventing credit costs from escalating. 901 F.2d at 1386.

2. This issue was not before the court in Edwards, although the panel acknowledged that the statute "clearly contemplates performance — within a specified period of time — of the alternatives outlined by it." 901 F.2d at 1386. It is worth noting, however, that the Seventh Circuit upheld the bankruptcy court's ruling which permitted the debtor to reaffirm the debt or redeem the collateral long after the expiration of the forty-five day period.

3. Likewise, in this Court's experience, most debtors do not perform the stated intention within forty-five days. Since a debtor's decision, and implementation of that decision, to redeem, reaffirm or surrender, does not affect the general administration of the case, the sanction of dismissal is disproportionate to the sin, absent other aggravating factors.

4. This conclusion is bolstered by the fact that the statute permits a debtor to unilaterally extend the time for performance to seventy-five days by waiting thirty days after the petition to file the statement of intention and permits the time for performance to be extended further upon motion. In addition, the debtor has the right to change his mind and amend the statement of intention. Fed.R.Bankr.P. 1009(b). Furthermore, Section 722 itself contains no deadline for redemption and makes no reference to Section 521(2). It has been held that a debtor may redeem property even after entry of the discharge. In re Hawkins, 136 B.R. 649 (Bankr.W.D.Va.1991).

5. A debtor is not bound by a stated intention even where the performance period elapses without modification of the statement of intention. In re Crooks, 148 B.R. 867 (Bankr.N.D.Ill.1993).

6. Oversecured creditors may be allowed to recover postpetition interest and reasonable attorney's fees as part of their secured claim pursuant to Section 506(b).